THE STATE EX REL. LANHAM *v.* DEWINE, ATTY. GEN., ET AL.

[Cite as *State ex rel. Lanham v. DeWine,* 135 Ohio St.3d 191, 2013-Ohio-199.]

*Mandamus—Public records—Attorney-client privilege—Motion to strike statements in affidavit denied because statements made were sufficiently based on affiant's personal knowledge—Documents covered by attorney-client privilege were properly withheld—Writ denied.*

(No. 2012-0203—Submitted January 9, 2013—Decided January 29, 2013.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} This is an action for a writ of mandamus to compel respondents, Attorney General Michael DeWine and his office (collectively, "the attorney general's office"), to provide unredacted copies of records relating to the claim that State Representative Danny R. Bubp simultaneously held the public offices of state representative and mayor's court magistrate. Because relator, Kent Lanham, has not established his entitlement to the requested extraordinary relief, we deny the writ.

**Facts**

{¶ 2} Danny R. Bubp was a state representative for the 88th house district in the General Assembly. In 2009 and 2010, Bubp served as state representative and also served as mayor's court magistrate for the villages of Ripley and Winchester, Ohio. Thereafter, Bubp continued to serve as state representative and mayor's court magistrate for Ripley.

{¶ 3} In October 2009, a Cincinnati television station reported that the Democratic Party chairmen of the three counties composing the 88th Ohio house district had filed complaints with then Ohio Attorney General Richard Cordray

and the county prosecuting attorneys claiming that by holding the public offices of state representative and mayor's court magistrate simultaneously, Bubp violated the Ohio Constitution, Article II, Section 4, and R.C. 101.26.

{¶ 4} Lanham is a taxpayer and resident of Clermont County, Ohio, which is within the 88th Ohio house district. On November 17, 2011, Lanham, through his counsel, Curt C. Hartman, hand-delivered to the attorney general's office a written request for copies of the following records concerning any report, complaint, claim, or other communication to that office relating to Bubp's simultaneously holding and exercising the public offices of state representative and mayor's court magistrate:

all records that document any report, complaint, claim, request for investigation or request for legal action relating to the fact that State Representative Danny R. Bubp was simultaneously holding and/or continues to simultaneously hold the public offices of state representative and magistrate in a mayor's court;

all records documenting all actions taken by the office or employees of the Ohio Attorney General in response to any report, complaint, claim, request for investigation or request for legal action relating to the fact that State Representative Danny R. Bubp was simultaneously holding and/or continues to simultaneously hold the public offices of state representative and magistrate in a mayor's court;

all records documenting any communication to or from the office or employees of the Ohio Attorney General in response to any report, complaint, claim, request for investigation or request for legal action relating to the fact that State Representative Danny R. Bubp was simultaneously holding and/or continues to

2

simultaneously hold the public offices of state representative and magistrate in a mayor's court;

any records documenting any investigation undertaken by the Office of the Attorney General, or its designee, concerning any report, complaint, claim, request for investigation or request for legal action relating to the fact that State Representative Danny R. Bubp was simultaneously holding and/or continues to simultaneously hold the public offices of state representative and magistrate in a mayor's court;

all records documenting any discussions, assessments, evaluation or decision by the Office of the Attorney General to pursue *vel non* any report, complaint, claim, request for investigation or request for legal action relating to the fact that State Representative Danny R. Bubp was simultaneously holding and/or continues to simultaneously hold the public offices of state representative and magistrate in a mayor's court;

all records documenting any discussions, assessments, evaluation or decision by the Office of the Attorney General to pursue *vel non* a *quo warranto* action against Danny R. Bubp for the forfeiture of the office of state representative in light due to the fact that Danny R. Bubp was simultaneously holding and/or continues to simultaneously hold the public offices of state representative and magistrate in a mayor's court;

any evaluation or analysis by the Office of the Attorney General concerning the provision of Article II, Section 4 of the Ohio Constitution that provides that "[n]o member of the general assembly shall, during the term for which he was elected * * * hold

any public office under * * * or this state, or a political subdivision thereof";

any evaluation or analysis by the Office of the Attorney General concerning the provision of Section 101.26 of the Ohio Revised Code that provides that "[n]o member of either house of the general assembly * * * shall knowingly do any of the following: * * * (C) Accept any * * * office * * * that is authorized or created by the general assembly and that provides other compensation than actual and necessary expenses * * *. Any member of the general assembly who accepts any appointment, office, or employment described in division (A), (B), or (C) of this section immediately shall resign from the general assembly, and, if he fails or refuses to do so, his seat in the general assembly shall be deemed vacant."

{¶ 5} In his request, Lanham stated that the time period for responsive documents may be limited to July 1, 2009, through the date of the request. By letter dated November 22, 2011, the attorney general's office acknowledged its receipt of the request. On December 1, 2011, the attorney general's office mailed a CD containing 172 pages of responsive documents. Several documents were withheld and parts of other documents were redacted based on the claim that they were covered by the attorney-client privilege.

{¶ 6} On December 7, 2011, Lanham's attorney e-mailed a request to the attorney general's office seeking clarification and confirmation of the attorney-client-privilege claim. Specifically, Lanham requested that the attorney general's office clarify, for each redaction, the identities of the attorney and client for purposes of invoking the privilege and how communications between Holly Hollingsworth, the director of media relations for the former attorney general, and

4

Kevin McIver, an assistant attorney general and chief of the opinions section for the office, were covered by the privilege. In its response, the attorney general's office noted that Lanham's questions concerning its reliance on the attorney-client privilege went beyond the scope of the public-records inquiry.

{¶ 7} On February 2, 2012, Lanham filed this action for a writ of mandamus to compel the attorney general's office to provide access to those portions of the requested public records that were withheld, including the records for which it claimed attorney-client privilege. Lanham also requested an award of statutory damages, attorney fees, and costs. The case was referred to mediation, 131 Ohio St.3d 1448, 2012-Ohio-520, 961 N.E.2d 685, but it was subsequently returned to the regular docket, 131 Ohio St.3d 1506, 2012-Ohio-1666, 965 N.E.2d 308. The attorney general's office then filed a motion to dismiss, and Lanham filed a motion to strike the exhibits attached to the motion to dismiss. Lanham also requested recusal of the court in this and a public-records mandamus case filed by him against Bubp, and two of the seven justices then sitting recused themselves.

{¶ 8} In June 2012, the court granted Lanham's motion to strike the exhibits attached to the motion to dismiss, denied the motion to dismiss, granted an alternative writ, and issued a schedule for the presentation of evidence and briefs. 132 Ohio St.3d 1420, 2012-Ohio-2729, 969 N.E.2d 268. The court dismissed Lanham's public-records mandamus case against Bubp. *State ex rel. Lanham v. Bubp*, 132 Ohio St.3d 1420, 2012-Ohio-2729, 969 N.E.2d 268.

{¶ 9} Of the 172 pages of documents produced by the attorney general's office, Lanham now identifies six redacted documents that remain at issue. The attorney general's office redacted these documents on the basis of attorney-client privilege; Lanham challenges the validity of these redactions.

{¶ 10} In addition to the six redacted documents, Lanham wants two additional documents. In the discovery responses provided to Lanham in the

*Bubp* case, a log of the items withheld on the ground of attorney-client privilege noted two letters from Michael Lenzo, the majority caucus counsel for the Ohio House of Representatives, to Assistant Attorney General McIver. These records were also not provided by the attorney general's office in response to Lanham's request, nor were they mentioned in the summary of the records it was not producing on the basis of attorney-client privilege.

{¶ 11} The parties submitted evidence and briefs. Lanham also filed a motion to strike portions of the affidavits submitted by the attorney general's office.

{¶ 12} This cause is now before the court for its consideration of the motion to strike and the merits.

**Analysis**

*Motion to Strike*

{¶ 13} In his motion, Lanham seeks to strike parts of the affidavit of Assistant Attorney General Erin Butcher-Lyden, who works with the public-records unit of the attorney general's office. Lanham argues that Butcher-Lyden's statements could not have been made based on her personal knowledge. Lanham also requests that paragraph 7 of the affidavits of Assistant Attorneys General Damian W. Sikora and Sarah Pierce be stricken. Along with paragraph 13 of Assistant Attorney General Butcher-Lyden's affidavit, these paragraphs refer to the parties' agreement at the conclusion of mediation. Lanham argues that communications in mediation are confidential and should not be disclosed.

{¶ 14} For the following reasons, we deny the motion to strike portions of the affidavits.

{¶ 15} First, Butcher-Lyden had sufficient personal knowledge to satisfy the requirements of former S.Ct.Prac.R. 10.7 (now S.Ct.Prac.R. 12.06). Under that rule, affidavits must be made on personal knowledge: "Affidavits shall be made on personal knowledge, setting forth facts admissible in evidence, and

showing affirmatively that the affiant is competent to testify to all matters stated in the affidavit." *See State ex rel. Dawson v. Bloom-Carroll Local School Dist.*, 131 Ohio St.3d 10, 2011-Ohio-6009, 959 N.E.2d 524, ¶ 20. However, personal knowledge can be inferred from the nature of the facts in the affidavit and the identity of the affiant. *See State ex rel. Corrigan v. Seminatore,* 66 Ohio St.2d 459, 467, 423 N.E.2d 105 (1981); *see also Bank of Am., Natl. Assn. v. Ly*, 9th Dist. No. 25360, 2011-Ohio-437, 2011 WL 345946, ¶ 12.

{¶ 16} Here, Butcher-Lyden, as an assistant attorney general, is familiar with the internal procedures and workings of the attorney general's office. She personally reviewed the documents identified as responsive to the public-records request and made a legal assessment for any potential exceptions to the Public Records Act, R.C. 149.43. The contested portions of her affidavit are sufficiently based on her personal knowledge, gained through firsthand observation of the documents as well as experience with the procedures at the attorney general's office, to satisfy the "personal knowledge" requirement of former S.Ct.Prac.R. 10.7 (now S.Ct.Prac.R. 12.06).

{¶ 17} Second, while the affidavits of Butcher-Lyden, Sikora, and Pierce do mention mediation, they do not disclose any details of the mediation itself but mention only those documents that were still at issue after the mediation was complete. In other words, they indicate the outcome of the mediation, but not how the parties got to that outcome. Moreover, knowledge of exactly what is still in contention is obviously needed by the court to continue this litigation. The comments in the affidavits about mediation do not violate former S.Ct.Prac.R. 17.2 (now S.Ct.Prac.R. 19.02).

{¶ 18} Therefore, we deny Lanham's motion to strike.

*Mandamus—Preliminary Matters*

{¶ 19} Mandamus is the proper action to compel adherence to R.C. 149.43, the Public Records Act, and courts construe the act liberally in favor of

7

broad access, resolving any doubt in favor of disclosure of public records. *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877, ¶ 16.

{¶ 20} The attorney general's office claims that the records at issue here are excepted from disclosure. In *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, at paragraph two of the syllabus, we set forth the standard of proof for public-records custodians attempting to establish an exception:

> Exceptions to disclosure under the Public Records Act, R.C. 149.43, are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception. A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception.

{¶ 21} Before assessing whether the attorney general's office met this burden here, we first address Lanham's preliminary contention that due process forbids the court from deciding this case based on its in camera inspection of the documents that the attorney general's office claims are excepted from disclosure. Lanham also contends that the log provided in discovery listing items that the attorney general's office claimed were covered by the attorney-client privilege is insufficient.

{¶ 22} First, the court has consistently required an in camera inspection of records before determining whether the records are excepted from disclosure:

> When a governmental body asserts that public records are excepted from disclosure and such assertion is challenged, the

court must make an individualized scrutiny of the records in question. If the court finds that these records contain excepted information, this information must be redacted and any remaining information must be released.

*State ex rel. Natl. Broadcasting Co. v. Cleveland*, 38 Ohio St.3d 79, 526 N.E.2d 786 (1988), paragraph four of the syllabus; *see also State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 128 Ohio St.3d 1451, 2011-Ohio-1702, 944 N.E.2d 1176 (court denied a motion for in camera review in a public-records mandamus case because it had already ordered the respondents to submit an unredacted copy of the records for which they claimed exemptions for in camera review); *State ex rel. Besser v. Ohio State Univ.*, 87 Ohio St.3d 535, 541-542, 721 N.E.2d 1044 (2000) (court noted that it has applied the *Natl. Broadcasting* "general rule to require *in camera* inspections in [public-records mandamus] cases in which a public entity's claim that records are exempt * * * is challenged").

{¶ 23} In challenging this longstanding procedure, Lanham cites cases from other jurisdictions that do not involve public-records requests. *See, e.g., In re Application of Eisenberg*, 654 F.2d 1107 (5th Cir.1981), and *Vining v. Runyon*, 99 F.3d 1056 (11th Cir.1996). These authorities are manifestly inapplicable because the sealed records at issue here are the specific subject of a mandamus action under R.C. 149.43. If the court were to require the disclosure of the subject records in discovery to permit relator to contest the applicability of a claimed exception, it would render the case moot. *State ex rel. Toledo Blade Co. v. Toledo–Lucas Cty. Port Auth.,* 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 14. And Lanham can still contest the applicability of a claimed exception by challenging the validity of unsealed evidence that the public-records custodian submits to support its reliance on the exception. In fact, he did so here—although unsuccessfully—through his motion to strike. Thus, due process does not prevent

the court's consideration of the pertinent records submitted under seal for in camera review.

{¶ 24} Moreover, Lanham's challenge to the sufficiency of the log supplied by the attorney general's office, which listed the items it claimed are protected by attorney-client privilege, is not cognizable in this public-records mandamus case. The attorney general's office was under no duty under R.C. 149.43 to submit a privilege log to preserve their claimed exception. *State ex rel. Nix v. Cleveland*, 83 Ohio St.3d 379, 383, 700 N.E.2d 12 (1998).

{¶ 25} With these preliminary issues resolved, we now consider the exception claimed by the attorney general's office for the requested records.

*Attorney-Client Privilege*

{¶ 26} The attorney general's office claims that the pertinent records are excepted from disclosure under the Public Records Act because they are covered by the attorney-client privilege. R.C. 149.43(A)(1)(v) exempts "[r]ecords the release of which is prohibited by state or federal law" from the definition of "public record." "The attorney-client privilege, which covers records of communications between attorneys and their government clients pertaining to the attorneys' legal advice, is a state law prohibiting release of those records." *Besser*, 87 Ohio St.3d at 542, 721 N.E.2d 1044. "In Ohio, the attorney-client privilege is governed both by statute, R.C. 2317.02(A), which provides a testimonial privilege, and by common law, which broadly protects against any dissemination of information obtained in the confidential attorney-client relationship." *Dawson*, 131 Ohio St.3d 10, 2011-Ohio-6009, 959 N.E.2d 524, ¶ 27.

{¶ 27} This court has previously addressed when the attorney-client privilege arises: " '(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance

permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.' " *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 21, quoting *Reed v. Baxter*, 134 F.3d 351, 355–356 (6th Cir.1998); *Perfection Corp. v. Travelers Cas. & Sur.*, 153 Ohio App.3d 28, 2003-Ohio-2750, 790 N.E.2d 817, ¶ 12 (7th Dist.).

{¶ 28} The six e-mails are communications between a client—in this case, members of the administration of the attorney general's office who asked for legal advice—with an attorney—in this case, members of the opinions section of the attorney general's office. They contain legal analysis and conclusions—that is, legal advice—from the attorneys in the opinions section to their clients in the administration. They do not appear to have been shared with anyone outside the attorney general's office; the privilege has thus not been waived. The six e-mails were properly withheld from a public-records release as attorney-client privileged materials.

{¶ 29} The documents sent from House Majority Counsel Lenzo to Assistant Attorney General McIver are not quite as obvious. However, we have held:

> "[T]he privilege is not narrowly confined to the repetition of confidences that were supplied to the lawyer by the client. That cramped view of the attorney-client privilege is at odds with the underlying policy of encouraging open communication; it poses inordinate practical difficulties in making surgical separations so as not to risk revealing client confidences; and it denies that an attorney can have any role in fact-gathering incident to the rendition of legal advice and services." (Citations omitted.)

(Emphasis deleted.) *State ex rel. Toledo Blade Co. v. Toledo–Lucas Cty. Port Auth.,* 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 26, quoting *Spectrum Sys. Internatl. Corp. v. Chem. Bank*, 78 N.Y.2d 371, 379, 575 N.Y.S.2d 809, 581 N.E.2d 1055 (1991). The attorney-client privilege does not require that the communication contain purely legal advice, but " 'if a communication between a lawyer and client would facilitate the rendition of legal services or advice, the communication is privileged.' " *Id.* at ¶ 27, quoting *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir.1991).

{¶ 30} In particular, in *Toledo Blade*, we held that an attorney's factual investigation, if incident to or related to any legal advice that the attorney would give on a particular issue, is covered by the privilege. *Id.* at ¶ 28-31.

{¶ 31} Here, the two documents Lanham asserts are improperly withheld are asserted by the attorney general's office to have been gathered by Assistant Attorney General McIver as part of his investigation into the matter on which he was advising his client. Our in camera inspection of the documents reveals that they contain material pertinent to such an investigation and were transferred to Assistant Attorney General McIver during the time period that he would have been investigating the Bubp matter for the attorney general. Therefore, we agree with the attorney general's office that the documents are covered by attorney-client privilege and were properly withheld.

### *Statutory Damages and Attorney Fees*

{¶ 32} The attorney general's office established the applicability of the attorney-client privilege and therefore did not fail to comply with R.C. 149.43. An award of statutory damages and attorney fees is therefore not appropriate. *See* R.C. 149.43(C)(1).

### Conclusion

{¶ 33} Because Lanham has failed to establish his entitlement to the requested extraordinary relief, we deny a writ of mandamus to compel the

attorney general's office to provide unredacted copies of the requested records. We deny Lanham's request for statutory damages and attorney fees.

Writ denied.

O'CONNOR, C.J., and PFEIFER, SADLER, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

LISA L. SADLER, J., of the Tenth Appellate District, sitting for O'DONNELL, J.

_____

The Law Firm of Curt C. Huffman and Curt C. Hartman, for relator.

Michael DeWine, Attorney General, and Damian W. Sikora and Sarah Pierce, Assistant Attorneys General, for respondents.

_____