[Cite as *Tucker v. Compudyne Corp.*, 2014-Ohio-3818.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100554**

## BETTY TUCKER, INDIVIDUALLY, ETC., ET AL.

PLAINTIFFS-APPELLEES

vs.

## COMPUDYNE CORPORATION, ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
AFFIRMED AS MODIFIED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-09-711927

**BEFORE:** S. Gallagher, J., Jones, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** September 4, 2014

**ATTORNEYS FOR APPELLANTS**

Kevin C. Alexandersen
Eric H. Mann
Colleen A. Mountcastle
Gallagher Sharp
Sixth Floor, Bulkley Building
1501 Euclid Avenue
Cleveland, OH    44115


**ATTORNEYS FOR APPELLEES**

**For Betty Tucker, Individually, etc., et al.**

Brian M. White
The Mismas Law Firm, L.L.C.
38052 Euclid Avenue
Suite 104
Willoughby, OH    44094

**Also listed:**

**For Crane Co.**

Kristen M. Delsole
K & L Gates, L.L.P.
K & L Center
210 6th Avenue
Pittsburgh, PA    15222

**Weil McClain Division of The Marley Co.**

Laura K. Hong
Tucker Ellis L.L.P.
950 Main Avenue, Suite 1100
Cleveland, OH    44113-7213

SEAN C. GALLAGHER, J.:

**{¶1}** Defendant-appellant CompuDyne Corporation ("CompuDyne") appeals the decision of the Cuyahoga County Court of Common Pleas that denied in part a motion for a protective order. For the reasons stated herein, we affirm the decision as modified.

**{¶2}** This action was commenced on December 3, 2009, by Michael Tucker ("Tucker"), Betty Tucker, and their minor children, alleging that Tucker contracted mesothelioma as a result of being exposed to asbestos-containing products manufactured by or otherwise connected to the various defendants, including CompuDyne. Unfortunately, Tucker died of mesothelioma on January 5, 2011. Afterward, Betty Tucker, as the executrix of the estate of Michael Tucker, filed an amended complaint that included a wrongful death cause of action.

**{¶3}** In December 2009 and January 2010, a video deposition was taken of Tucker. Tucker testified that he was employed by Steelman Cincinnati during a period of less than a year in 1980 and 1981. During this time he worked as a laborer assisting technicians in servicing and repairing boilers at various work sites. There is evidence that at three of the work sites, Tucker worked on York-Shipley boilers, from which he believed he was exposed to asbestos.

**{¶4}** William Rock, the chief financial officer for CompuDyne from 1996 until 2008, represented in his affidavit that CompuDyne is a financial holding company with no employees and that CompuDyne has never manufactured or sold asbestos or asbestos-containing products. Rock represented that on May 29, 1969, York-Shipley,

Inc. (DE), which he understood to be in existence since at least 1943 as a manufacturer of boilers, merged into CompuDyne and that CompuDyne was the surviving corporate entity. CompuDyne, by virtue of the 1969 merger, acquired all liabilities of York-Shipley, Inc. (DE), up to May 29, 1969. CompuDyne concedes it is responsible for boilers manufactured by York-Shipley, Inc. (DE), up to May 1969.

{¶5} Rock indicated in his affidavit that following the merger, all of the assets of York-Shipley, Inc. (DE), were transferred to York-Shipley, Inc. (PA), which had been incorporated as a subsidiary of CompuDyne, and that thereafter, York-Shipley, Inc. (PA), manufactured boilers and other parts. The affidavit of Rock sets forth the subsequent corporate history of York-Shipley, Inc. (PA), and states that CompuDyne was dissolved on March 1, 1993. Various transaction documents and annual reports were attached to Rock's affidavit. Rock was also deposed in the matter.

{¶6} In responding to interrogatories, CompuDyne indicated that it had acquired York-Shipley, Inc. (DE), and referenced the articles of merger. CompuDyne also referenced pre-May 1969 manufactured boilers by York- Shipley, Inc., as asbestos-containing products that were placed into the stream of commerce. However, no specifics concerning the brand or trade names and dates of production were provided. Further, rather than responding to interrogatory No. 5 with specific information regarding asbestos-containing products that were manufactured and sold by its subsidiaries and/or predecessors, CompuDyne responded that it had not engaged in such a practice.

**{¶7}** In the course of the proceedings, CompuDyne filed a motion for summary judgment that was denied by the trial court. The trial court found there is sufficient evidence that Tucker worked on York-Shipley boilers and was exposed to asbestos contained in the boilers.

**{¶8}** During discovery, CompuDyne inadvertently disclosed a 17-page document titled "CompuDyne Annual Review National Coordinating Counsel January 20, 2011," which is referred to as "the Litigation Analysis." The Litigation Analysis was prepared by Scott Henry, CompuDyne's national coordinating counsel. CompuDyne filed a motion for protective order seeking to protect the Litigation Analysis from discovery under the attorney-client privilege and the work-product doctrine. The motion was opposed by plaintiffs-appellees.

**{¶9}** The trial court conducted an in camera inspection of the Litigation Analysis and held a hearing on the motion. At the hearing, the trial court found that the Litigation Analysis was a privileged document, but found the protection afforded to paragraphs 18(a) and (b) was obviated based upon plaintiffs' need for the information and inability to obtain it elsewhere. The court suggested that if CompuDyne chose to amend its answers to interrogatories or to propose a stipulation to comport with the information contained in paragraphs 18(a) and (b) of the Litigation Analysis, then there would be no need for disclosure.

**{¶10}** After the parties failed to reach an agreed stipulation, CompuDyne requested a written ruling from the trial court. Thereafter, the trial court issued an order that denied

the motion for protective order as to paragraphs 18(a) and (b).   Paragraph 18(a) sets forth a history of York-Shipley, Inc., including its production of boilers for commercial application, and sets forth the manner in which asbestos was used in various products manufactured by York-Shipley, including the specific asbestos-containing material used inside its boilers.   Paragraph 18(b) sets forth a corporate history of CompuDyne in regard to its relationship with York-Shipley, Inc. (DE), and York-Shipley, Inc. (PA), which includes the subsidiaries and predecessors of CompuDyne.

{¶11} The trial court recognized that much of the Litigation Analysis had no relevance to this case.   However, the court found that paragraphs 18(a) and (b) were subject to disclosure, stating in part:

> The Court finds these two paragraphs deal directly with issues germane to this case.
>
> * * * Throughout the litigation of this case, Defendant CompuDyne insisted that it has no documents concerning its relationship with York-Shipley, the manufacturer of the asbestos laden boilers to which Plaintiff's decedent was allegedly exposed.   At the hearing before the Court on October 15, 2013, counsel for CompuDyne informed the court that there was no living person with sufficient knowledge of [CompuDyne's] corporate history to affirm, deny or explain the relationship between CompuDyne and York-Shipley or the presence of asbestos in York-Shipley boilers.   More significantly, in responses to discovery propounded by Plaintiffs, [CompuDyne] denied the existence of any subsidiaries and/or predecessors.
>
> Consequently, Defendant CompuDyne Corporation has failed to demonstrate good cause to protect paragraphs 18(a) and (b) from discovery and from presentation as evidence at trial.   Disclosure and use at trial is warranted, since there is no other source of this critical information.

**{¶12}** CompuDyne appeals this ruling. Under its two assignments of error, CompuDyne claims the trial court erred in ordering the disclosure of privileged information contained in paragraphs 18(a) and (b) of the Litigation Analysis because (1) "[t]he document was prepared by national coordinating counsel for CompuDyne and is protected by the attorney-client privilege[,]" and (2) "plaintiffs failed to show good cause under Civ.R. 26(B)(3) to defeat the opinion work product privilege attached to the Litigation Analysis."

**{¶13}** Under Civ.R. 26(B)(1), the scope of pretrial discovery is broad and parties may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter. When a discovery issue involves an alleged privilege, it is a question of law that must be reviewed de novo. *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, ¶ 13. The burden of showing that a document is privileged rests with the party seeking to exclude it. *Li v. Olympic Steel, Inc.*, 8th Dist. Cuyahoga No. 97286, 2012-Ohio-603, ¶ 9. "The determination whether a communication should be afforded the cloak of the privilege depends on the circumstances of each case, and the privilege must yield when justice so requires." *Id.* at ¶ 10, citing *Lemley v. Kaiser*, 6 Ohio St.3d 258, 264, 452 N.E.2d 1304 (1983).

**{¶14}** "In Ohio, the attorney-client privilege is governed both by statute, R.C. 2317.02(A), which provides a testimonial privilege, and by common law, which broadly protects against any dissemination of information obtained in the confidential attorney-client relationship." *State ex rel. Dawson v. Bloom-Carroll Local School Dist.*,

131 Ohio St.3d 10, 2011-Ohio-6009, 959 N.E.2d 524, ¶ 27, citing *State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 24. The privilege is intended to encourage full and frank communication between attorneys and their clients and is founded on the premise that confidences shared in the attorney-client relationship are to remain confidential. *State ex rel. Toledo Blade Co.* at ¶ 21. "[A]n attorney's factual investigation, if incident to or related to any legal advice that the attorney would give on a particular issue, is covered by the privilege." *State ex rel. Lanham v. DeWine*, 135 Ohio St.3d 191, 2013-Ohio-199, 985 N.E.2d 467, ¶ 29, citing *State ex rel. Toledo Blade Co.* at ¶ 28-31.

{¶15} Although the Litigation Analysis arguably is subject to the attorney-client privilege, we conclude that the trial court properly ordered the disclosure of paragraphs 18(a) and (b). Because the attorney-client privilege is an exception to the general rules of disclosure, where it obstructs the search for relevant information, the privilege should be strictly construed. *Air-Ride, Inc. v. DHL Express (USA), Inc.*, 12th Dist. Clinton No. CA2008-01-001, 2008-Ohio-5669, ¶ 12, citing *Farm Credit Bank of St. Paul v. Huether*, 454 N.W.2d 710, 721 (N.D.1990).

{¶16} In this case the Litigation Analysis was inadvertently disclosed. Several Ohio courts have adopted a case-by-case approach to determine whether the circumstances of the inadvertent disclosure warrant a finding that the privilege has been waived. *See Air-Ride, Inc.* at ¶ 16; *Guider v. Am. Heritage Homes Corp.*, 3d Dist. Logan No. 8-07-16, 2008-Ohio-2402, ¶ 9; *Miles-McClellan Constr. Co. v. Westerville Bd. of*

*Edn.*, 10th Dist. Franklin Nos. 05AP-1112, 05AP-1113, 05AP-1114, and 05AP-1115, 2006-Ohio-3439, ¶ 14-16.   Under this approach, the court generally considers the following five factors to determine whether the inadvertent disclosure should constitute a waiver of the privilege:

> (1) the reasonableness of the precautions taken to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the "overriding issue of fairness."

*Air Ride, Inc.* at ¶ 17; *Guider* at ¶ 9.   Although no one factor is dispositive, "overreaching considerations of fairness" may weigh heavily in favor of finding a waiver of privilege after an inadvertent disclosure.   *See Air Ride, Inc.* at ¶ 17.   We adopt this approach herein.[1]

{¶17} The inadvertent disclosure of a privileged document itself is indicative of a failure to take reasonable precautions to protect the privilege.   *Air Ride, Inc.* at ¶ 18.   In this case, it is unclear what, if any, precautions were in place to prevent dissemination of the Litigation Analysis.   The document, which was prepared in January 2012, was discovered by plaintiffs' counsel in July 2013.   After the inadvertent disclosure was discovered, CompuDyne promptly asked for its return.   Upon being informed of opposing counsel's intent to dispute the privileged nature of the document, CompuDyne

---

[1]   Although Fed.R.Evid. 502(b) sets forth three requirements for an inadvertent disclosure to operate as a waiver, federal courts generally consider five similar factors to determine whether an inadvertent disclosure constitutes a waiver.   *See Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, S.D.Ohio No. 2:07-CV-116, 2012 U.S. Dist. LEXIS 121830 (Aug. 28, 2012).   The Advisory Committee Notes to Fed.R.Evid. 502(b) state that "[t]he rule is flexible enough to accommodate any of those * * * factors."

filed a motion for a protective order and the trial court held an in camera review and conducted a hearing. Although the record does not show the circumstances under which the document was disclosed or the scope of discovery involved with its production, the extent of the disclosure was complete as plaintiffs' counsel had a full opportunity to review the document, analyze its content, and assess its import on the case. The trial court considered that the information contained in paragraphs 18(a) and (b) dealt directly with issues germane to this case, that the information was not provided in the responses to discovery, and that disclosure of the information was warranted.

{¶18} "Where inadvertently disclosed documents are found to be relevant to the receiving party, fairness dictates waiver should be found." *Air Ride, Inc.* at ¶ 28, citing *Draus v. Healthtrust, Inc.,* 172 F.R.D. 384, 388 (S.D.Ind.1997). Further, in this case, the trial court initially gave CompuDyne the opportunity to amend its interrogatories or to propose a stipulation to comport with the information contained in paragraphs 18(a) and (b) of the Litigation Analysis. Because an agreed stipulation was not reached, the overriding issue of fairness required disclosure under the circumstances of this case.

{¶19} We next consider the work-product doctrine. In Ohio, the work-product doctrine is set forth in Civ.R. 26(B)(3), which provides in relevant part:

> a party may obtain discovery of documents, electronically stored information and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative * * * only upon a showing of good cause therefor.

The Ohio Supreme Court has stated that "a showing of good cause under Civ.R. 26(B)(3) requires demonstration of need for the materials — i.e., a showing that the materials, or

the information they contain, are relevant and otherwise unavailable." *Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, ¶ 16. The party seeking discovery has the burden to demonstrate good cause for the sought-after materials. *Id*. The determination of whether materials are protected by the attorney work-product doctrine and the determination of good cause are discretionary determinations to be made by the trial court. *State ex rel. Greater Cleveland Regional Transit Auth. v. Guzzo*, 6 Ohio St.3d 270, 271, 452 N.E.2d 1314 (1983). Our review of these determinations is for an abuse of discretion. *Sherwin-Williams Co. v. Motley Rice L.L.C.*, 8th Dist. Cuyahoga No. 96927, 2012-Ohio-809, ¶ 34.

{¶20} In this matter, the Litigation Analysis was prepared by Scott Henry, national coordinating counsel for CompuDyne. He prepared the document for CompuDyne's outside corporate counsel and its insurers at their request. It was intended to serve as a comprehensive assessment of all pending claims against CompuDyne. Henry testified that the document contained his analysis and opinions of the national litigation that his client was facing in multiple cases in multiple states.

{¶21} Henry testified that paragraphs 18(a) and (b) of the Litigation Analysis were prepared by prior national coordinating counsel, who was deceased. Henry had no reason to believe the information was incorrect. These paragraphs provide factual information regarding the corporate history of CompuDyne in regard to its relationship with York-Shipley, Inc. (DE), and York-Shipley, Inc. (PA), and also detail the asbestos

content of York-Shipley boilers. The paragraphs contain factual information that was not provided in the responses to discovery.

{¶22} Although CompuDyne maintains that it provided accurate responses to the interrogatories, it avoided providing responses and information as to York-Shipley and the asbestos-containing products used in York-Shipley boilers. Further, although CompuDyne claims that it has never asserted that it was not responsible for the pre-1969 York-Shipley boilers at issue in this case and has provided corporate documents concerning its relationship with York-Shipley, Inc. (DE), and York-Shipley, Inc. (PA), the information provided does not contain the factual details contained in the Litigation Analysis, which implicates York-Shipley in manufacturing and selling boilers that contained asbestos-containing parts. As the trial court recognized, CompuDyne's response to interrogatory No. 5, which indicated it had never engaged in the mining, manufacturing, selling, marketing, installation, or distribution of asbestos-containing products, and its response to the request for production that it had no predecessors "doesn't square with the corporate history" outlined in the Litigation Analysis. Further, while CompuDyne produced its corporate representative Rock for a deposition and provided his affidavit, he did not possess the information set forth in the Litigation Analysis. The sought-after information was nowhere else provided, and there is no living person who possesses knowledge of the corporate history as described in the Litigation Analysis.

**{¶23}** Appellees met their burden of demonstrating "good cause" to order the production of this information and showed there was a need for this information, which was relevant to appellees' claims and was otherwise unavailable. The court did not abuse its discretion in finding paragraphs 18(a) and (b) were not protected by the work-product doctrine with regard to the factual information contained therein.

**{¶24}** However, we note that a very limited portion of paragraph 18(b) does contain Henry's legal impressions and should be subject to redaction. Therefore, we modify the trial court's decision and instruct that paragraphs 18(a) and (b) are subject to disclosure with the redaction of the following lines under paragraph 18(b): the last sentence of the 1969 section, the last sentence of the 1984 section, the last sentence of the 2001 section, as well as the statement that begins with two asterisks that follows.

**{¶25}** Judgment affirmed as modified.

It is ordered that appellees recover of appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

LARRY A. JONES, SR., P.J., and
KENNETH A. ROCCO, J., CONCUR