[Cite as *See v. Haugh*, 2014-Ohio-5290.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 101380

---

**MICHAEL D. SEE**

PLAINTIFF-APPELLANT

vs.

**JOHN C. HAUGH, ET AL.**

DEFENDANTS-APPELLEES

---

**JUDGMENT:**
REVERSED, VACATED, AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-797343

**BEFORE:** E.T. Gallagher, J., Celebrezze, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** November 26, 2014

**ATTORNEY FOR APPELLANT**

Kevin T. Roberts
The Roberts Law Firm
7622 Columbia Road
Olmsted Falls, Ohio 44138


**ATTORNEYS FOR APPELLEES**

Christine M. Garritano
Christopher J. Bondra
Robert B. Casarona
Roetzel & Andress, L.P.A.
1375 East Ninth Street
One Cleveland Center, 9th Floor
Cleveland, Ohio 44114

EILEEN T. GALLAGHER, J.:

{¶1} Plaintiff-appellant, Michael D. See ("See"), appeals the trial court's judgment granting defendants-appellees', John C. Haugh and Michael R. Shaughnessy (collectively "appellees"), motion to compel compliance with subpoena and to respond to questions posed during deposition. Finding merit to the appeal, we reverse, vacate the trial court's judgment, and remand for a hearing in accordance with this opinion.

{¶2} In his complaint, See alleges that in 1996 he was persuaded to join ColorMatrix Corporation ("ColorMatrix") based on appellees' verbal promise to transfer 2% of their 100% ownership in the company to See and other members of the senior management team, as part of their plan to sell the company when they retired. See contends appellees made this promise to entice him to quit his job and join ColorMatrix. See claims that appellees never transferred any ownership to See, or to any other senior management employee, as promised.

{¶3} In 2011, See filed suit, represented by attorney Jim Grove ("Grove"). The case was voluntarily dismissed without prejudice. In 2012, See refiled his case, represented by attorney Jim Major ("Major"). Major had represented another member of ColorMatrix's senior management, Robert Malburg ("Malburg"), in a separate claim. In *Malburg v. Shaughnessy*, Cuyahoga C.P. No. CV-11-763507 (May 30, 2014) ("the *Malburg* case"),[1] Malburg alleged the same breach of appellees' verbal promise as See did.

{¶4} In the *Malburg* case, thousands of pages of documents were subpoenaed by Malburg from ColorMatrix in December 2012. In the course of discovery, appellees were given a set of courtesy copies. Included in these documents was a personal memo ("the memo") written by

---

[1] The case dismissed with prejudice on 5/30/2014, following plaintiff's notice of dismissal.

See. See argues the memo was auto-saved to the ColorMatrix server, without his knowledge, when he uploaded it to his work computer for the purposes of editing.

{¶5} In February 2014, See was deposed by appellees. During the deposition, appellees' counsel introduced the memo, without objection from See's counsel. Appellees' counsel briefly questioned See regarding the memo and his attorneys: "[s]o you go to see Attorney Jim Major in Broadview Heights, and he tells you you need to decide whether you trust them or not, correct?" The deposition transcript states that See nodded "in the affirmative" in response. Appellees' counsel then asked, "[n]ow, am I to understand that he never told you to document the promise that you claimed existed? Is that your testimony? That this attorney —," See responded "[n]o." See's counsel interjected "[o]kay. Listen, I think it's privileged. Now, you can argue the cat's out of the bag here." To which appellees counsel responded, "[h]e waived it."

{¶6} The parties agreed to disagree, pending a ruling from the trial court on the issue. However, prior to any such ruling, appellees served See's attorney with a subpoena requesting all communications between the two, and all communications between See and his initial counsel, Grove. See and his counsel refused.

{¶7} In March 2014, appellees filed a motion to compel compliance with the subpoena and to respond to questions posed during deposition. See filed a brief in opposition, along with exhibits and an affidavit. Appellees filed a reply brief. In April 2014, the trial court granted appellees' motion, without opinion. It is from this decision that See now appeals.

**Standard of Review**

**{¶8}** In his sole assignment of error, See argues the trial court erred in granting appellees' motion, based on appellees' argument that See waived his attorney-client privilege through the memo and his deposition testimony.

**{¶9}** A trial court is vested with wide discretion in rendering decisions on discovery matters. *Dandrew v. Silver*, 8th Dist. Cuyahoga No. 86089, 2005-Ohio-6355, ¶ 35, citing *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 592, 664 N.E.2d 1272 (1996).

> Generally, discovery orders by a trial court have traditionally not constituted final, appealable orders in Ohio. In the case of an order compelling the production or disclosure of material allegedly protected by attorney-client privilege, however, an interlocutory appeal will lie. *Shaffer v. OhioHealth Corp.*, Franklin App. No. 03AP-102, 2004 Ohio 63, at P6.

*Miles-McClellan Constr. Co. v. Westerville Bd. of Edn.*, 10th Dist. Franklin Nos. 05AP-1112, 05AP-1113, 05AP-1114, and 05AP-1115, 2006-Ohio-3439, ¶ 8.

**{¶10}** Although the applicable standard for appellate review of discovery matters is generally whether the trial court abused its discretion, if the discovery issue involves an alleged privilege, as in this case, it is a question of law that must be reviewed de novo. *Watson v. Cuyahoga Metro. Hous. Auth.*, 8th Dist. Cuyahoga No. 99932, 2014-Ohio-1617, ¶ 24, citing *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13.

**{¶11}** "The attorney-client privilege is one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States*, 524 U.S. 399, 384, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998). The Ohio Supreme Court, in *Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, held that "R.C. 2317.02(A) provides the exclusive means by which privileged communications directly between an attorney and a client can be waived." *Id*. at the syllabus, following *State v. McDermott*, 72 Ohio St.3d 570, 651 N.E.2d 985 (1995).

**{¶12}** R.C. 2317.02 provides:

> [T]he following persons shall not testify in certain respects: (A)(1) An attorney, concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, except that the attorney may testify by express consent of the client * * *.  However, if the client voluntarily testifies or is deemed by section 2151.421 [2151.42.1] of the Revised Code to have waived any testimonial privilege under this division, the attorney may be compelled to testify on the same subject.

These two exceptions to the attorney-client privilege, express waiver and voluntary testimony by the client about the privileged matter, have been held to be the only two methods by which the privilege may be waived.  *McDermott* at 572.

### The Memo

**{¶13}** See argues he did not waive his attorney-client privilege by way of his memo because (1) the memo is not an attorney-client communication, (2) appellees were barred from using the memo in the current litigation based on the Agreed Protective Order ("protective order") from the *Malburg* case, and (3) the memo does not contain privileged information. Appellees argue the memo does contain privileged information and that they were not barred from using it because the protective order does not apply to it.

### Protective Order

**{¶14}** First, See argues the memo fell within the purview of the protective order entered into by the parties in the *Malburg* case.  Appellees concede that the memo was discovered during the discovery process in the *Malburg* case but argue it is not included in the set of documents covered by the protective order.

**{¶15}** In the *Malburg* case, the parties entered into a stipulated protective order in June 2013.  The protective order states that documents that may be designated confidential, and which are subject to the protective order, include those that contain "trade secret[s] or other confidential research, development, or commercial information."  The protective order further

states that a "[b]lanket designation of documents or information as confidential information en masse and/or without regard to the specific contents of each document or piece of information is prohibited." The protective order specifies that documents and information shall only be designated confidential if they are "normally treated by such Producing Party as confidential and [are] not generally disclosed to third parties."

{¶16} Appellees argue the protective order does not apply to See's memo because it was produced by ColorMatrix in December 2012, and the protective order was not entered into by the parties until June 2013. However, the terms of the agreement are silent as to whether all documents produced in the course of litigation are covered by the agreement or not. The protective order, attached to See's brief in opposition to appellees' motion to compel, is silent as to its retroactivity to documents produced prior to the order being entered into.

{¶17} Regardless, having reviewed See's memo, we find that it does not contain trade secrets, confidential research, development, or commercial information. In turn, ColorMatrix, as the producing party of See's memo, would not normally treat it as confidential. See argues the memo is confidential because it is stamped "Confidential." However, that stamp appears to be the type of "blanket designation," done en masse without regard to the memo's content, that the agreement explicitly prohibits. Thus, regardless of whether the protective order is retroactive, we find it does not apply to See's memo and therefore, appellees are not barred by the protective order from using it.

### Privileged Matter

{¶18} Next, we address the question of whether or not the memo is privileged or contains privileged information. Having reviewed See's personal memo, it is evident that the memo itself is not a direct communication between See and either of his trial attorneys. The memo is

not addressed to anyone, nor does it make any reference to being drafted for the purpose of being disseminated to anyone. It is evident that See drafted the memo himself, for his personal use, to summarize and memorialize events and communications regarding his allegations and potential litigation against appellees. The memo is not, in its entirety, an attorney-client communication.

{¶19} However, there are three sentences in the memo in which See states what his attorneys advised him regarding his litigation — twice regarding Major and once, admitted specifically during his deposition testimony, regarding Grove. (Tr. 96.)

> I went to Jim Major, attorney in Broadview Heights, and was advised that I needed to decide whether to trust them or not. He advised me that if I accepted that the promise had changed to the "equivalent amount of money was coming to me", and that "my payoff was with their payoff", that they had not breached their agreement unless I had reason not to trust them.
>
> * * *
>
> Upon hearing of Rob's treatment, I again went to an attorney [Grove] and was advised that there may be limitations on the time that I can act.

See's memo plainly refers to information related to his counsel's representation of him. The memo contains details regarding the advice See was given by Major and Groves, divulging the substance of See's meetings with his counsel. Thus, we find the memo contains privileged information.

### Voluntary Disclosure

{¶20} Next, pursuant to R.C. 2317.02(A), we must address whether the production of the memo can be characterized as voluntary. See argues that he never intended for ColorMatrix to possess his memo and that the disclosure of the memo was not voluntary. Appellees argue See's intent is irrelevant, and the disclosure was voluntary because See is not entitled to any privacy on

his work laptop. In disclosing the memo to a third party, appellees argue See has waived his claim of privilege with regard to all communications on the same subject matter.

{¶21} In the affidavit attached to his brief in opposition to appellees' motion to compel, See claimed to have created the memo on his personal computer, intending for it to remain confidential. He surmised that he must have later accessed the memo on his work computer, via a thumb drive, for the purpose of editing the document, allowing it to be auto-saved to the ColorMatrix server without his knowledge.

{¶22} However, as appellees argue in their brief, See admitted during his deposition that he typed it on his work computer. When asked about the memo, "[i]s it fair to say that you typed it on your computer at ColorMatrix?" See replied, "[y]es." (Tr. 76.) Regardless of which computer See used to create the memo, it is undisputed that at some point he accessed it on his work computer and it was auto-saved to the ColorMatrix server.

{¶23} We are not persuaded by See's argument that this situation is comparable to the inadvertent disclosure of attorney-client communications on public computers or public wi-fi. See should have known that anything he created or uploaded to his work computer became the property of his employer. He is afforded no expectation of privacy on a computer owned by his employer. Thus, the disclosure of the matters discussed in the memo can be characterized as voluntary.

{¶24} Because a client's voluntary disclosure of confidential communications is inconsistent with an assertion of privilege, voluntary disclosure of privileged communications to a third party waives a claim of privilege with regard to communications on the same subject matter. *MA Equip. Leasing I, L.L.C. v. Tilton*, 2012-Ohio-4668, 980 N.E.2d 1072, citing *Hollingsworth v. Time Warner Cable*, 157 Ohio App.3d 539, 812 N.E.2d 976 (1st Dist.2004).

**{¶25}** Appellees' argument regarding waiver ends with characterizing See's disclosure as voluntary and asks this court to affirm the trial court's judgment. However, appellees failed to refute See's contention that the memo was accidentally or *inadvertently* auto-saved to the ColorMatrix server. Whereas a client's *voluntary* disclosure of confidential communications to a third party waives a claim of privilege, the same is not always the case for *inadvertent* disclosures. See's lack of intent to have his memo auto-saved to the ColorMatrix server does not overcome the voluntariness of the act. However, it does support the argument that the disclosure was inadvertent. Thus, the question remains, what effect does the inadvertency of See's disclosure have on the potential for waiver of his attorney-client privilege?

**Inadvertent Disclosure**

**{¶26}** In *Miles-McClellan*, 10th Dist. Franklin Nos. 05AP-1112, 05AP-1113, 05AP-1114 and 05AP-1115, 2006-Ohio-3439, the Tenth District addressed a similar issue of whether the voluntary yet inadvertent disclosure of privileged material by the Westerville Schools waived, in whole or in part, the school board's attorney-client privilege with respect to those documents and related materials. The court found that the disclosure of privileged material was voluntary because it was based on Westerville's lack of oversight and failure to review requested documents in the course of discovery. However, the court found the voluntary disclosure should still be characterized as inadvertent.

**{¶27}** In defining voluntary and inadvertent, the Tenth District differentiated between the two:

> Without torturing the dictionary, we find that disclosure of the privileged materials in this case was voluntary to the extent that it did not result from deceptive or coercive actions on the part of the parties who came into their possession: Bricker and Westerville Schools freely made the documents available along with the larger mass of discoverable materials requested during discovery.

> To the extent that production of the privileged materials was certainly, at least after the fact, either regretted or undesired by Bricker and Westerville Schools, these entities are certainly entitled to describe the release of the documents as inadvertent, whether it resulted from clerical error, lack of oversight, or complete failure to review the requested materials prior to making them available. Likewise, appellants can claim that release of the materials was unintentional, * * *, since the privileged material was not deliberately conveyed either to an opposing party or the media with conscious intent to release the information therein.

*Miles-McClellan*, 10th Dist. Franklin Nos. 05AP-1112, 05AP-1113, 05AP-1114 and 05AP-1115, 2006-Ohio-3439 at ¶ 13.

{¶28} As was the case in *Miles-McClellan*, we find that See's disclosure of his memo was voluntary to the extent that it did not result from deceptive or coercive actions on the part of the parties who came into their possession. But just as Westerville Schools regretted the production of the privileged material, so too did See regret using his work computer to compose or edit his personal memo. Thus, we find See is entitled to describe his voluntary disclosure as inadvertent and unintentional.

{¶29} In addressing the inadvertent disclosure of privileged matter. The *Miles-McClellan* court looked to federal courts for guidance:

> "Some cases have applied a test of strict accountability, holding that nearly any disclosure of the communication waives the privilege." [*Draus v. HealthTrust, Inc.* (1997), 172 F.R.D. 384] at 387. "Other courts have held that unintentional disclosure cannot waive the privilege. These courts have reasoned that a waiver of the privilege must be intentional, and that inadvertent disclosure therefore cannot waive the privilege." *Id.* "Other courts take a middle ground, deciding case-by-case whether the circumstances of the inadvertent disclosure warrant a finding that the privilege has been waived." *Id.* Inadvertent waiver is not "waiver in the standard sense in which the word is used in the law: the deliberate relinquishment of a known right." *Dellwood Farms, Inc. v. Cargill, Inc.* (1997), 128 F.3d 1122, citing *United States v. Olano* (1993), 507 U.S. 725, 733, 113 S. Ct. 1770, 1777, 123 L. Ed. 2d 508. When waiver in this form is found in cases of inadvertent disclosure, it is in order to "punish the person claiming the privilege for a mistake * * *." *Id.*

*Id.* at ¶ 14. The Tenth District opted to use the middle ground, case-by-case approach:

Under this case-by-case basis, courts have applied a balancing test in which the court will weigh (1) the reasonableness of the precautions taken by the party asserting privilege to prevent the disclosure, (2) the time taken to rectify the inadvertent error, (3) the scope and nature of the discovery proceedings, (4) the extent of the disclosure in relation to a role in discovery proceedings, and (5) the overriding issue of fairness. *Mattenson v. Baxter Healthcare Corp.* (N.D.Ill.2003), No. 02 C 3283, 2005 U.S. Dist. LEXIS 10137 (Slip Opinion); *Drauss* [sic], at 389; *Urban Outfitters, Inc. v. DPIC Cos.* (N.D.Ill.2001), 203 F.R.D. 376, 380.

*Miles-McClellan* at ¶ 16. This approach has been adopted by numerous other appellate courts in Ohio, including this court. *See Tucker v. Compudyne Corp.*, 8th Dist. Cuyahoga No. 100554, 2014-Ohio-3818; *Guider v. Am. Heritage Homes Corp.*, 3d Dist. Logan No. 8-07-16, 2008-Ohio-2402; *Air-Ride, Inc. v. DHL Express (USA), Inc.*, 12th Dist. Clinton No. CA2008-01-001, 2008-Ohio-5669. Although no one factor is dispositive, "overreaching considerations of fairness" may weigh heavily in favor of finding a waiver of privilege after an inadvertent disclosure. *Air-Ride, Inc.* at ¶ 17.

**{¶30}** However, the *Miles-McClellan* court did not apply this balancing test itself, but held instead:

that the law in Ohio shall be that the trial court, in addressing inadvertent disclosure of allegedly privileged documents in the course of discovery, must hold a hearing considering the above-outlined factors before determining to what extent, if any, waiver has occurred with respect to the contested materials.

*Id*. at ¶ 16. The court in *Miles-McClellan* vacated the trial court's order and remanded the matter for such a hearing.

**{¶31}** In the instant case, the record is silent as to whether the trial court contemplated the issue of inadvertent disclosure. The docket reveals that no hearing was conducted regarding the determination that See waived his privilege. Therefore, as was done in *Miles-McClellan*, we

vacate the trial court's order granting appellees' motion to compel, and remand for the trial court to conduct a hearing in which it applies the aforementioned balancing test.

**{¶32}** In light of the need for a hearing to address See's inadvertent disclosure of his memo, we will not address his deposition testimony at this time, as it directly relates to the memo and its contents.

**{¶33}** The sole assignment of error is sustained.

**{¶34}** Judgment is reversed and vacated. This matter is remanded to the trial court for further proceedings in accordance with law and this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
TIM McCORMACK, J., CONCUR