[Cite as *State ex rel. Community Journal v. Reed*, 2014-Ohio-5745.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| STATE OF OHIO EX REL. THE COMMUNITY JOURNAL, NORTH CLERMONT, | : | |
| | : | CASE NO. CA2014-01-010 |
| Relator, | : | D E C I S I O N 12/30/2014 |
| - vs - | : | |
| ERIN C. REED, | : | |
| Respondent. | : | |


ORIGINAL ACTION IN MANDAMUS


Graydon Head & Ritchey LLP, John C. Greiner, 1900 Fifth Third Center, 511 Walnut Street, Cincinnati, Ohio 45202, for relator

R. Michael DeWine, Ohio Attorney General, Jeffery W. Clark, 30 West Broad Street, 16th Floor, Columbus, Ohio 43215-3400, for respondent


**S. POWELL, J.**

{¶ 1} The current case is before this court pursuant to a complaint brought by relator, The Community Journal, North Clermont (Journal), seeking a writ of mandamus to compel respondent, Erin C. Reed, Director of Administration for Ohio Bureau of Criminal Identification and Investigation (BCI), to produce records it has in its possession regarding missing property from the Goshen Township Police Department (Police Department).

## I. Statement of Facts

{¶ 2}   On August 13, 2013, the Clermont County Sherriff's Office sent a letter to BCI requesting that BCI investigate "current criminal activity" occurring in Clermont County. The letter stated that "approximately $8,000 in various money orders from a drug bust are missing" and that the "criminal activity may involve local law enforcement officers and fraud involving the evidence locker" at the Police Department. On August 19, 2013, the Goshen Township Chief of Police separately e-mailed BCI to request its assistance in investigating the missing property.

{¶ 3}   BCI opened an investigation into the allegations of criminal activity occurring at the Police Department and assigned Special Agent Karen Rebori to investigate. Agent Rebori received two sets of documents from the Police Department in connection with her investigation, one on August 28, 2013 and another on August 30, 2013. The two sets of documents contained over 700 records and Agent Rebori "assembled, compiled, and maintained" the records for her investigation into the missing property.

{¶ 4}   On August 30, 2013, Keith BieryGolick, a reporter for the Journal, contacted BCI and requested permission to inspect "all records and documents, including any electronic mail and electronic files and text messages, created, received, or sent by representatives of Goshen Township in Clermont County between Jan. 1, 2013 and Aug. 20, 2013 concerning missing evidence and/or missing property from the Goshen Police Department" that were currently in the possession of BCI. BCI denied the request in its entirety stating that pursuant to R.C. 149.43(A)(1)(h), all the records received from the Police Department are confidential law enforcement investigatory records of an ongoing investigation and the release of those records would create a high probability of disclosure of specific investigatory work product.

{¶ 5}   Over the next several weeks, counsel for the Journal and BCI engaged in

further correspondence regarding the production of the records. Eventually, BCI sent the Journal copies of the Clermont County Sheriff's Office letter requesting BCI initiate an investigation and the similar request from the Goshen police chief. Later, BCI also released a copy of an article written by BieryGolick concerning the missing property and the Police Department's Evidence Room Manager Policy.

{¶ 6} On January 22, 2014, the Journal subsequently filed the present action, a complaint in this court for a writ of mandamus against BCI. The Journal seeks an order requiring BCI to make all records it received concerning the missing property at the Police Department available to the Journal for inspection and copying. The Journal also requests BCI to pay statutory damages, court costs and attorney fees for its failure to comply with R.C. 149.43.

{¶ 7} While this action was pending, the Journal served BCI with a set of interrogatories that included questions asking BCI to describe the type of documents contained within the records, the date the documents were created and to identify the person that created each document. BCI objected to these interrogatories and did not respond. The Journal filed a motion to compel BCI to respond to these interrogatories. The matter came before a magistrate, who denied the Journal's motion. The Journal has filed an objection to magistrate's decision denying its motion to compel.

{¶ 8} Both the Journal and BCI have filed cross-motions for summary judgment. The Journal maintains that the records are "public records" pursuant to R.C. 149.43 and that the confidential law enforcement investigatory records exception as asserted by BCI does not apply because it does not cover an entire investigative file. Further, the Journal argues BCI is unable to show the documents were created in connection with a criminal proceeding. BCI counters that all the records it received in regards to the missing property fall under the confidential law enforcement investigatory records exception.

{¶ 9}  On August 7, 2014, BCI filed a "notice to court and suggestion of mootness" notifying this court that its investigation regarding the missing property had concluded and therefore it was releasing to the Journal most of the requested records, subject to some redactions.  BCI argues that this action is now rendered moot since it has provided the records to the Journal.  The Journal disputes the mootness argument and maintains this issue is "capable of repetition, yet evading review" and that BCI improperly redacted the information contained in the records.

{¶ 10} Accordingly, the following motions are before this court: 1) the Journal's objections to the magistrate's decision denying its motion to compel discovery; 2) BCI's and the Journal's cross-motions for summary judgment; and 3) BCI's notice to the court and suggestion of mootness and the Journal's memorandum challenging mootness and the redaction of the records.

## II.  Analysis

### A.  Ohio Public Records Act

{¶ 11}  As an initial matter, we note the resolution of the instant dispute is governed by the Ohio Public Records Act.  Ohio's Public Records Act, codified at R.C. 149.43, mandates full access to public records upon request, unless the requested records fall within one of the exceptions specifically enumerated in the Act.  *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency*, 88 Ohio St.3d 166, 170 (2000).  The Act requires that "upon request and subject to division (B)(8) of this section, all public records responsive to the request shall be promptly prepared and made available for inspection to any person * * * [and] upon request a public office or person responsible for public records shall make copies of the requested public record  * * *."  R.C. 149.43(B)(1).

{¶ 12} A "public record" is a record kept by any public office.  R.C. 149.43(A)(1).  The Act exempts "confidential law enforcement investigatory records" from its application.  R.C.

149.43(A)(1)(h).  A "confidential law enforcement investigatory record" is defined as:

> [A]ny record that pertains to a law enforcement matter of a criminal, quasi-criminal, or civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:
>
> (a)  The *identity of a suspect who has not been charged* with the offense to which the record pertains, or of an information source or witness to whom confidentiality has been reasonably promised;
>
> * * *
>
> (c)  Specific confidential investigatory techniques or procedures or *specific investigatory work product*.

(Emphasis added.)  R.C. 149.43(A)(2).

{¶ 13}  The Public Records Act "must be construed liberally in favor of broad access, and any doubt should be resolved in favor of disclosure of public records."  *State ex rel. Beacon Journal Publishing Co. v. Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, ¶ 8.  "[I]nherent in R.C. 149.43 is the fundamental policy of promoting open government, not restricting it."  *State ex rel. The Miami Student v. Miami Univ.*, 79 Ohio St.3d 168, 171 (1997).  The government "bears the burden of establishing that the requested information is exempt from disclosure."  *Bond* at ¶ 8.

## B.  Discovery

{¶ 14}  During discovery, BCI refused to answer interrogatories requesting it to describe the type of documents contained within the records, the date the documents were created and the identity of the person who created each document.  The Journal filed a motion to compel BCI to answer the interrogatories, which the magistrate denied.  The Journal argues the answers in response to the interrogatories would support its argument that documents created prior to the investigation or not prepared by BCI do not fall within the confidential law enforcement records exception.

- 5 -

{¶ 15} In addressing this matter, we note that BCI and the Journal have disagreed over the proper characterization of the magistrate's "entry denying [the Journal's] motion to compel discovery." After the magistrate denied the Journal's motion, the Journal filed an "objection to magistrate's decision." BCI maintains that the Journal's motion is not an objection but is more of the nature of a motion to set aside a magistrate's order. We agree that the Journal's motion is better characterized as a motion to set aside the magistrate's order. Civ.R. 53(D)(2)(b). The magistrate's entry was an order necessary to regulate the proceedings and not dispositive of a claim or defense of a party. Civ.R. 53(D)(2)(a)(i). *See In re H.R.K.*, 8th Dist. Cuyahoga No. 97780, 2012-Ohio-4054, ¶ 8; *J & B Fleet Indus. Supply, Inc. v. Miller*, 7th Dist. Mahoning No. 09 MA 173, 2011-Ohio-3165, ¶ 30. However, regardless of whether the magistrate's entry is better characterized as a "decision" or an "order," neither party has cited any authority regarding how this affects our review of the magistrate's decision, and therefore, for purposes of this opinion, we will treat the Journal's motion as objections to the magistrate's decision. Accordingly, we will undertake an independent review of the magistrate's decision. Civ.R. 53(D)(4)(d).

{¶ 16} Civ.R. 26 establishes the scope of discovery and states that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Parties generally should be granted broad leeway in discovering material that may be useful to them in preparing for litigation. *Grantz v. Discovery For Youth*, 12th Dist. Butler Nos. CA2004-09-216 and CA2004-09-217, 2005-Ohio-680, ¶ 11, citing *Stegawski v. Cleveland Anesthesia Group, Inc.*, 37 Ohio App.3d 78, 85 (8th Dist.1987). The concept of relevancy as it applies to discovery is not limited to the issues in the case, but to the subject matter of the action, which is a broader concept. *Nilavar v. Osborn*, 137 Ohio App.3d 469, 499 (2d Dist.2000). The Civil Rules permit discovery of information so long as it is "reasonably calculated to lead to the discovery of admissible

evidence." Civ.R. 26(B)(1).

{¶ 17} Although not specifically addressed by either party, the Ohio Supreme Court's decision in *Henneman v. City of Toledo*, 35 Ohio St.3d 241(1988), is helpful in our analysis in determining whether records that might reveal aspects of a confidential law enforcement investigation are discoverable. In *Henneman*, the Court recognized a qualified common law privilege in discovery for law enforcement investigatory files. *Id.* at 245. When deciding whether confidential law enforcement records are discoverable, courts are to apply a balancing test and rule that such records are subject to discovery if "upon an *in camera* inspection, the trial court determines that the requesting party's need for the material outweighs the public interest in the confidentiality of such information." *Id.* at 246.

{¶ 18} In the case at bar, BCI stated in its response to request for admissions that there were "over 700 pages of records contained in the Records;" the records will be submitted to the Court for an *in camera* review; at least 35 pages of the records contain handwritten notations; all records "were assembled" by a BCI agent in connection with a "probable criminal proceeding;" none of the records were created by BCI; all of the documents constitute working papers assembled by a BCI agent; at least four of the documents may be described as "memorandum;" 53 of the records are labeled as "incident reports;" and the criminal investigation is ongoing but no criminal charges have been filed.

{¶ 19} In denying the Journal's motion to compel discovery, the magistrate reasoned that requiring BCI "to parse which withheld records constitute notes assembled by law enforcement officials, determine who created each record, and when each record was created will not help [the Journal] or this court determine whether or not the records were improperly withheld." Additionally, the magistrate reasoned that revealing this information might disclose the identity of an uncharged suspect or the identity of a confidential source.

{¶ 20} We have conducted a thorough *in camera* review of the withheld records to

- 7 -

determine whether the asserted public records exceptions are applicable. We overrule and deny the Journal's objection to the magistrate's decision because the Journal's need for answers to the interrogatories does not outweigh the interest in the confidentiality of this information. In light of the information already provided to the Journal, requiring BCI to identify the type of documents withheld, the creator of those documents, and the date the documents were created is not reasonably calculated to lead to admissible material. The legal question in this case is whether all documents contained in a criminal investigation file are covered by the confidential law enforcement exception. BCI's responses already gave the Journal information that none of the documents were created by BCI and several of the documents were labeled as incident reports. Further identification of the documents would not assist the Journal in its argument because BCI already admitted that these documents were not created by BCI. Therefore, the information already provided in the interrogatories was sufficient for the Journal to contest the applicability of the confidential law enforcement exception. *State ex rel. Lanham v. DeWine*, 135 Ohio St.3d 191, 197, 2013-Ohio-199.

{¶ 21} Additionally, requiring BCI to reveal this information about the documents may reveal the identity of the uncharged suspect, the identity of a confidential source or specific confidential investigatory techniques or procedures. As stated above, we have reviewed the withheld records *in camera* to determine whether the records fit under the public records exceptions. *See State ex rel. WLWT-TV5 v. Leis*, 77 Ohio St.3d 357, fn. 1 (1997) (relator not entitled to an inventory of withheld law enforcement investigatory records to assure "full submission of documents" when documents were filed for *in camera* review); *State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, ¶ 14 ("[i]f the court were to require the disclosure of the subject records in discovery to permit relator to contest the applicability of a claim exception, it would render the case moot").

{¶ 22} The Journal's motion to compel discovery is therefore denied.

## C. Summary Judgment

{¶ 23} Both parties also argue summary judgment should be granted in their favor. Before the records were produced, the Journal and BCI filed summary judgment motions regarding whether the records fit under the confidential law enforcement records exception and whether a common law privilege prohibited their release. Specifically, BCI argued the entire investigative file qualifies as "specific investigatory work product" under the confidential law enforcement exception. After the records were released, BCI argued this action has been rendered moot. However, the Journal claims the action is not moot and further asserts BCI's redaction of certain information was improper. We will address these arguments in three parts: 1) mootness; 2) whether the entire investigative file qualified as "specific investigatory work product" prior to the release of the redacted records; 3) and whether BCI's redaction of the information was proper.

{¶ 24} Civ.R. 56(C) sets forth the conditions under which it is appropriate to grant summary judgment: 1) there are no genuine issues of material fact to be litigated; 2) the moving party is entitled to judgment as a matter of law; and, 3) when all evidence is construed most strongly in favor of the nonmoving party, reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-70 (1998). The party moving for summary judgment has the initial burden of producing evidence that affirmatively demonstrates the absence of a genuine issue of material fact. *First Horizon Home Loans v. Sims*, 12th Dist. Warren No. CA2009-08-117, 2010-Ohio-847, ¶ 19, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996). If the moving party meets its burden, the nonmoving party may not rest on the allegations or denials of its pleadings, but instead must meet its reciprocal burden under Crim.R. 56(E) to set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.*

{¶ 25} To prevail on a petition for a writ of mandamus, "relator must establish (1) a clear legal right to the relief requested, (2) that respondents have a clear legal duty to perform the act or acts requested, and (3) that relator has no plain and adequate remedy [at law]." *State ex rel. Cincinnati Enquirer v. Heath*, 183 Ohio App.3d 274, 2009-Ohio-3415, ¶ 11 (12th Dist.), citing *State ex rel. Seikbert v. Wilkinson*, 69 Ohio St.3d 489, 490 (1994). Mandamus is the appropriate remedy to seek compliance with R.C. 149.43. *State ex rel. Beacon Journal Publishing Co. v. Akron*, 104 Ohio St.3d 399, 2004-Ohio-6557, ¶ 23.

### 1. **Mootness**

{¶ 26} BCI asserts this action has been rendered moot because the investigation has concluded and it has released the requested records to the Journal with some information redacted. In response, the Journal argues the action is not moot because the issue is "capable of repetition yet evading review."

{¶ 27} "[I]n general, providing the requested records to the relator in a public-records mandamus case renders the mandamus claim moot." *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 120 Ohio St.3d 372, 2008-Ohio-6253, ¶ 43. But a claim "is not moot if it is capable of repetition, yet evading review." *State ex rel. Dispatch Printing Co. v. Geer*, 114 Ohio St.3d 511, 2007-Ohio-4643, ¶ 10. This exception "applies only in exceptional circumstances in which the following two factors are both present: (1) the challenged action is too short in its duration to be fully litigated before its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *State ex rel. Calvary v. Upper Arlington*, 89 Ohio St.3d 229, 231 (2000). *See also State ex rel. Am. Legion Post 25 v. Ohio Civ. Rights Comm.*, 171 Ohio App.3d 476, 2006-Ohio-5509 (12th Dist.).

{¶ 28} To the extent BCI withheld the records on the basis of the "specific investigatory work product" branch of the confidential law enforcement exception because the records

pertained to a current criminal investigation, we find the Journal's mandamus action is moot. BCI has produced the requested records, subject to redactions predicated on other claimed exemptions. In producing the records, BCI has conceded that the requested documents are no longer part of a current criminal investigation, and therefore, the exception under R.C. 149.43(A)(2)(c) is no longer applicable. *See State ex rel. Miller v. Ohio State Hwy. Patrol*, 12th Dist. Clermont No. CA2012-05-034, 2014-Ohio-2244, ¶ 9. Moreover, although a records custodian's reliance on the confidential law enforcement exception is an issue capable of repetition, the Journal has not shown that this particular issue, – i.e., a law enforcement agency's investigatory review and corresponding reliance on the exception – will always be too short in duration to be fully litigated or that a review of this issue will be evaded in future cases. *See Ohio Patrolmen's Benevolent Assn. v. McFaul*, 144 Ohio App.3d 311 (8th Dist.2001). Accordingly, the limited exception to the mootness doctrine does not apply in this case.

{¶ 29} However, the production of requested documents does not, according to the Public Records Act, moot a claim for damages. *Miller* at ¶ 12. R.C. 149.43(C)(1) provides that an aggrieved party may pursue a mandamus action and be entitled to statutory damages upon a public entity's failure to provide public records in accordance with the statute. One is only entitled to damages if the relator first demonstrates the respondent failed to provide the records in accordance with R.C. 149.43(B)(1). *State ex rel. Patton v. Rhodes*, 129 Ohio St.3d 182, 2011-Ohio-3093, ¶ 21. Nonetheless, the Journal is not entitled to attorney fees in regards to the arguments that have been rendered moot. *State ex rel. DiFranco v. S. Euclid*, 138 Ohio St.3d 367, 2014-Ohio-538, ¶ 32. Therefore, for purposes of awarding statutory damages, we must determine whether BCI violated the Public Records Act when it initially refused to provide the information under the specific investigatory work product branch of the confidential law enforcement records exception.

## 2. Specific Investigatory Work Product

{¶ 30} BCI maintains the records it received from the Police Department, its entire investigative file, qualifies as "specific investigatory work product" under the confidential law enforcement exception because BCI gathered all the records for its investigation. The Journal disputes this assertion arguing: 1) BCI cannot identify the author of each record and when the records were created therefore BCI cannot establish that each record was created by law enforcement for a criminal case; and 2) the records that were "public records" at the Police Department are always "public records" even in the hands of BCI.

{¶ 31} As stated above, confidential law enforcement investigatory records are defined as "any record that pertains to a law enforcement matter of a criminal, quasi-criminal, or civil, or administrative nature." R.C. 149.43(A)(2). This exception covers records to the extent that "the release of the record would create a high probability of disclosure of * * * specific confidential investigatory techniques or procedures or *specific investigatory work product*." (Emphasis added.) R.C. 149.43(A)(2)(c).

{¶ 32} The Ohio Supreme Court has established a two-part test to determine whether a particular record is a confidential law enforcement investigatory record as contemplated within the Public Records Act. "'First, is the record a confidential law enforcement record? Second, would release of the record 'create a high probability of disclosure' of any one of the four kinds of information specified in R.C. 149.43(A)(2)?'" *State ex rel. Musial v. N. Olmsted*, 106 Ohio St.3d 459, 2005-Ohio-5521, ¶ 19, quoting *State ex rel. Beacon Journal Publishing Co. v. Maurer*, 91 Ohio St.3d 54, 56 (2001).

{¶ 33} Specific investigatory work product is one of the four types of information enumerated in R.C. 149.43(A)(2). Specific investigatory work product consists of any "notes, working papers, memoranda or similar materials, prepared by attorneys [here, by law enforcement officials] in anticipation of litigation." *State ex rel. Steckman v. Jackson*, 70 Ohio

St.3d 420, 434 (1994). This definition "is broad enough to bring under its umbrella any records *compiled* by law enforcement officials" and "information *assembled* by law enforcement officials in connection with a probable or pending criminal proceeding." (Emphasis added.) *Id.* at 435.

**{¶ 34}** However, specific investigatory work product does not include "ongoing routine offense and incident reports" and these papers are "subject to immediate release upon request." *Id.* Additionally, recordings of 911 calls are public records and do not fall under the confidential law enforcement exception and "the fact that the tapes in question subsequently came into the possession and/or control of a prosecutor, other law enforcement officials, or even the grand jury has no significance." *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 378 (1996). "Once clothed with the public records cloak, the records cannot be defrocked of their status." *Id.*

**{¶ 35}** The Journal's first contention is that the documents are not "specific investigatory work product" because BCI did not create the documents and does not know when the documents were created. However, *Steckman* made clear that "specific investigatory work product" includes documents "compiled" and "assembled" by law enforcement in connection with a probable criminal proceeding. In this case, Agent Rebori averred that she received numerous documents from the Police Department and all of these documents have been compiled, assembled, and maintained by BCI for the investigation of possible criminal activity at the Police Department. Consequently, the fact that BCI compiled and assembled the documents is a sufficient basis to conclude the documents are "specific investigatory work product."

**{¶ 36}** The Journal's second contention is that BCI's entire investigative file does not qualify as "specific investigatory work product" because any records that were "public records" at the Police Department cannot subsequently become specific investigative work

product simply because the records are in BCI's possession. Therefore, the Journal asserts that BCI must go through its investigative file and release those records that were "public records" at the Police Department. We are unpersuaded by the Journal's argument as the records BCI received from the Police Department are not the "public records" of BCI as defined under R.C. 149.43(A)(1).

{¶ 37} R.C. 149.43(A)(1) defines "public records" as "*records* kept by any public office." (Emphasis added.) "Records" is defined earlier in the Chapter as,

> any document, device, or item, regardless of physical form or characteristic, including an electronic record * * *, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, *which serves to document the organization, functions, policies*, *decisions, procedures, operations, or other activities of the office.*

(Emphasis added.) R.C. 149.011(G).

{¶ 38} In this case, the precise question before this court is whether the records held by BCI are "public records" subject to disclosure or if the records fall under the confidential law enforcement exception under the Public Records Act. Importantly, this court is not deciding whether the records fall into a public records exclusion while held at the Police Department.[1] The documents BCI received from the Police Department were not BCI's "public records" as the documents were not kept by BCI to "document the organization, functions, policies, decisions, procedures, operations, or other activities" of BCI. Instead, the documents served only to further BCI's criminal investigation of illicit activity occurring at the Police Department. Therefore, because the documents were never BCI's "records," we find the documents do not fall under the ambit of the Public Records Act and do not need to be

---

1. The Journal filed a writ of mandamus only against BCI and therefore this opinion is limited to whether the requested documents were "public records" at BCI and subject to disclosure under the Public Records Act. Moreover, although the Goshen police chief indicated that BCI advised him not to release the records to the Journal, the evidence before us indicates BCI informed the chief to contact the Clermont County Prosecutor's Office for legal advice. We find no improper actions by BCI and the Police Department in this regard.

disclosed.

**{¶ 39}** In reaching this conclusion, we recognize the Ohio Supreme Court has found that records which were "made in the routine course of public employment" that supported a disciplinary charge against an employee but were made before a criminal investigation began, were public records and therefore did not fall under the confidential law enforcement exception. *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, ¶ 51. In *Morgan*, a city employee was fired after the city conducted an investigation into her behavior, filed disciplinary charges against her and then sent its investigation to BCI. *Id.* at ¶ 5. The employee requested records from the city that supported the disciplinary charges, but specifically exempted any record compiled in anticipation of litigation or investigation. *Id.* at ¶ 15. The city denied the request reasoning that all the requested documents were confidential law enforcement records. *Id.* at ¶ 14. The employee filed a mandamus action to seek production of the records.

**{¶ 40}** The court found that the requested records did not fall under the confidential law enforcement exception because they were "related to general employment e.g., timesheets, mayoral directives, and personnel records and policies, which preceded any investigation commenced" by BCI. *Id.* at ¶ 50. Accordingly, the court concluded these records should have been released because they "were not generated by the various investigations concerning [the employee.] Instead, they were records made in the routine course of public employment before those investigations began." *Id.* at ¶ 51.

**{¶ 41}** Like *Morgan*, some of the records requested in this case were created before a criminal investigation began into the missing property. However, while similar, there is one crucial fact of *Morgan* that separates the Ohio Supreme Court's decision from the case at bar. In *Morgan* the employee requested the records from the *city* and in our case the Journal requested the records from *BCI*. Therefore, in *Morgan*, there was never any doubt that the

- 15 -

requested records were "public records" of the city as the records documented the "organization, functions, policies" of the city. However, in this case, the records held by BCI did not satisfy this definition as the records only served to document the organization, functions, policies of the Police Department and not BCI.

{¶ 42} Consequently, we find all of the requested records held by BCI prior to the conclusion of its criminal investigation were properly withheld from the Journal as the documents were not "public records" subject to disclosure under the Public Records Act.[2]

### 3. Redacted Records

{¶ 43} As previously mentioned, while this action was pending, BCI's investigation concluded and BCI conceded this terminated "the application of the 'investigative work product' branch of the [confidential law enforcement] exemption." Therefore, BCI released the requested records to the Journal with some information redacted. BCI argues the redaction is justified because of the: 1) grand jury subpoena exception pursuant to Crim.R. 6(E) and R.C. 149.43(A)(1)(v); and 2) uncharged suspect exception under the confidential law enforcement exception pursuant to R.C. 149.43(A)(2)(a).

{¶ 44} In our earlier discussion, we found that the documents were not BCI's "public records," and therefore, the Journal was never entitled to the records under the Public Records Act. We find the same rationale applies to the Journal's redaction arguments. While BCI treated the documents as "public records" in an abundance of caution and released most of the documents to the Journal once the criminal investigation concluded, the documents were never BCI's "public records." BCI was not compelled to produce the records

---

2. In the Journal's initial public records request and the subsequent correspondence, the Journal requested BCI's entire investigative file. The Journal did not request the individual records contained in that file. Therefore, this court is not presented with the question of whether the Journal would be entitled to individual documents contained in that file if specifically requested. *See Conley v. Correctional Reception Ct.*, 141 Ohio App.3d 412, 416-417 (4th Dist.2001)(analysis limited to relator's public records request); *State ex rel. Glasgow v. Jones*, 119 Ohio St.3d 391, 2008-Ohio-4788, ¶ 17 ("it is the responsibility of the person who wishes to inspect and/or copy records to identify with reasonable clarity the records at issue").

under the Public Records Act, thereby rendering any redaction of information and release of the documents to BCI's own choosing. Accordingly, we do not find the redaction of information to be improper.

### III. Conclusion

{¶ 45} Finding no merit to the Journal's objection to the magistrate's entry denying the Journal's motion to compel discovery, that entry is hereby approved and adopted as the order of the court. Additionally, the Journal is not entitled to a writ of mandamus since the documents were not BCI's "public records" under the Public Records Act. Consequently, the Journal is not entitled to statutory damages, court costs or attorney fees. Moreover, because BCI was not compelled to produce the documents under the Public Records Act, we need not discuss whether a common law privilege for investigatory files prevented the release of the documents. Therefore, BCI's motion for summary judgment is granted and the Journal's motion for summary judgment is denied.

{¶ 46} Writ denied.

M. POWELL, J. concurs.

HENDRICKSON, P.J. concurs in part and dissents in part.

**HENDRICKSON, P.J., concurring in part and dissenting in part.**

{¶ 47} For the reasons set forth below, I respectfully concur in part and dissent in part. I concur with the majority's decision with respect to the Journal's motion to compel albeit for different reasons. I also concur with the majority's finding that the issue of damages is not moot; however, I dissent from the finding that the mandamus action is moot. Moreover, as explained below, I respectfully dissent from the majority's decision finding BCI is entitled to summary judgment because I find that all of the records or documents received by BCI from

Goshen Township Police Department (Goshen Police Department) do in fact fall within the meaning of "records" as defined by R.C. 149.011(G). Based upon case law established over the years in determining whether certain records are protected by the confidential law enforcement investigatory records (CLEIR) exception, I find that summary judgment is inappropriate at this stage and additional proceedings are necessary to determine whether the records fall within this exception.

**Discovery**

{¶ 48} After an independent review of the magistrate's decision, I agree with the majority and would affirm the magistrate's decision to deny the Journal's motion to compel. However, I write separately as I believe the motion to compel should have been denied for reasons different than those cited by the majority.

{¶ 49} In the present case, BCI objected to eight of thirteen written interrogatories presented by the Journal. Essentially, the Journal inquired which documents in the records constituted "notes," "working papers," or "memoranda" assembled by "law enforcement officials in connection with a probably [sic] or pending criminal investigation." The Journal also inquired and requested BCI to describe any other record not previously identified in the prior interrogatories. In each instance, BCI initially stated its objection to the interrogatory and its reasoning for the objection; however it then proceeded to supply specific answers to each inquiry. Although I find that BCI made improper objections to certain interrogatories, I would find BCI acted appropriately by actually providing proper answers in each of its responses.

{¶ 50} More specifically, while BCI initially objected to Interrogatory No. 2 inquiring how many different records are contained in the "Record," BCI actually answered the discovery by stating "there are over 700 pages of records contained in the Records." This was appropriate since R.C. 149.011(G) defines "record" as "any document." Moreover, it is clear that the

Journal's request for BCI to identify the number of records that would be classified as "notes," "working papers," or "memoranda" in Interrogatories Nos. 3, 5, and 7, was fulfilled by BCI's responses. Like Interrogatory No. 2, BCI first objected to each of these three interrogatories and then provided a proper response, i.e., BCI identified 35 of the documents as containing handwritten notes, stated that all of the Records were "working papers," and at least 4 of the documents could be classified as a "memorandum."

{¶ 51} As to Interrogatories Nos. 4, 6, and 8, I would agree with the majority that the identity of the person who created each document is arguably not relevant, but more importantly, the disclosure of the document's author may reveal protected information under the Public Records Act. Finally, in regards to Interrogatory No. 9, the Journal requested BCI to identify any records not yet identified. As BCI had previously identified in Interrogatory No. 5 that all Records were "working papers," there were no records left to be identified by BCI. Therefore, no response was required by BCI to Interrogatory No. 9.

{¶ 52} In light of BCI's responses after making specific objections to the interrogatories and that the disclosure of any remaining information might reveal information protected under the Public Records Act, I would affirm the magistrate's entry denying the Journal's motion to compel.

**Mootness**

{¶ 53} As to BCI's notice to the court and suggestion of mootness, I agree with the majority's rationale and finding that the issue of damages is not moot. Moreover, as asserted by the majority, the case law is clear, once a relator has been provided with the requested records in a public-records mandamus case, the mandamus claim is moot. However, whether BCI properly redacted portions of the records must still be determined and has not been rendered moot. Accordingly, this court, as a whole if a remand is ordered, still needs to decide if BCI properly redacted information from the Records.

**Summary Judgment**

**1. Definition of "Record" Under R.C. 149.011(G)**

{¶ 54} In reaching its conclusion in this case, the majority narrowly construes the definition of "record" under R.C. 149.011(G) and ignores both the fundamental principles of the Public Records Act and the Ohio Supreme Court's position on records received by a governmental agency created by third parties that are then incorporated into the agency's office in order to document its functions, decisions, operations, or other activities of the office. As recognized by the supreme court, "[p]ublic records are one portal through which the people observe their government, ensuring its accountability, integrity, and equity while minimizing sovereign mischief and malfeasance." *Kish v. Akron*, 109 Ohio St. 3d 162, 2006-Ohio-1244, ¶ 16. With this principle in mind, "our legislators, executives, and judges [have] mandated and monitored the careful creation and preservation of public records and codified the people's right to access those records." (Citations omitted.) *Id.* at ¶ 17. R.C. Chapter 149 and other similar statutes, "reinforce the understanding that open access to government papers is an integral entitlement of the people, to be preserved with vigilance and vigor." *Id.* Therefore, the Public Records Act "must be construed *liberally* in favor of *broad access*, and *any doubt* should be *resolved in favor of disclosure* of public records." (Emphasis added.) *State ex rel. Beacon Journal Publishing Co. v. Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, ¶ 8.

{¶ 55} From the outset, it is important to note that the majority's ultimate holding that all 700 records are not records under R.C. 149.011(G), was never raised by the parties in any of their pleadings. In fact, it speaks volumes that the party most affected in this case, BCI, never once challenged whether the records it received from Goshen Police Department met the statutory definition of "records" under the act. Ironically, the only argument BCI raised in its pleadings was that the records fell within the CLEIR exception, and qualified as

"specific investigatory work product." Accordingly, I would find that BCI has conceded that the documents at issue in this case are records under R.C. 149.011(G), and therefore has waived any argument to the contrary.

{¶ 56} Furthermore, I would find, based upon the Supreme Court of Ohio's more recent interpretation of 149.011(G), that the records received by BCI from Goshen Police Department indeed fall within the definition of "records" under the statute. R.C. 149.011(G) defines a "record" as:

> Any document, device, or item, regardless of physical form or characteristic, * * * *created or received by* or coming under the jurisdiction of any public office of the state * * * which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.*

(Emphasis added.)

{¶ 57} The supreme court has recognized the expansive scope of the definition of "records" under R.C.149.011(G), stating:

> We previously have held that the General Assembly's use of "includes" in R.C. 149.011(G) as the preface to the definition of "records" is an indication of expansion rather than constriction, restriction, or limitation and that the statute's use of the phrase "any document" is one encompassing all documents that fit within the statute's definition, regardless of "form or characteristic."

*State ex rel. Data Trace Info. Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 131 Ohio St.3d 25, 2012-Ohio-753, ¶ 30-31. In addition, it has been said that the definition of records under R.C. 149.011(G) includes "anything a governmental unit utilizes to carry out its duties and responsibilities." *State ex rel. Mazzaro v. Ferguson*, 49 Ohio St.3d 37, 39 (1990). *See Kish*, 2006-Ohio-1244 at ¶ 20 ("there is a great breath in the definition of 'records' * * *. Unless otherwise exempted or excepted, almost all documents memorializing the activities of a public office can satisfy the definition of 'record'").

{¶ 58} As to the determination of when documents become "records" for purposes of

the Public Records Act, the Supreme Court of Ohio has previously determined that it depends upon when those documents were retrieved and relied upon. *State ex rel. Cincinnati Enquirer v. Ronan*, 127 Ohio St.3d 236, 2010-Ohio-5680. In *Ronan*, the court held that job application materials sent to a school district's post office box were not "records" based on the "mere receipt" of the material by the district. *Id.* at ¶ 15. However, the court determined the documents became "records" when the "school district retrieved the documents from its post office box and reviewed them or otherwise relied on them." *Id.* at ¶ 16; *see also State ex rel. Beacon Journal Publishing Co. v. Whitmore*, 83 Ohio St.3d 61, 63 (1998) (finding letters not "records" when received but not relied upon by Judge in sentencing decision); *Kisch* at ¶ 23.

{¶ 59} Under *Ronan*, the materials received by BCI were public records once BCI obtained, reviewed, and relied upon the documents in its investigation of the Goshen Police Department. Special Agent Karen Rebori averred in her affidavit that the Records received by BCI from the Goshen Police Department were "assembled, compiled, and maintained by me for use in my investigation of the missing property." The fact that BCI did not create the documents is not dispositive because the definition of "records" under R.C. 149.011(G) includes *anything* a government unit utilizes to carry out its duties and responsibilities, even records *received* by it.

{¶ 60} In addition to *Ronan*, the supreme court has also found that documents submitted to a public office by a third party are "records" within the meaning of R.C.149.011(G) when the public office uses the documents in order to comply with a statutory mandate. *Data Trace*, 2012-Ohio-753. In *Data Trace*, the fiscal officer for the county argued "that documents recorded in a county recorder's office are not records subject to R.C. 149.43 because they do not document the organization, functions, policies, decisions, operations, or other activities of the recorder's office. Instead, * * * they document the

independent acts of third parties who present the instruments to the officer for recording."

The supreme court rejected the fiscal officer's argument finding it lacked merit. In so finding,

the high court recognized that the county recorder had discretion in whether to "refuse to

record an instrument of writing presented to the recorder for recording if [1] the instrument is

not required or authorized by the Revised Code to be recorded or [2] the recorder has

reasonable cause to believe the instrument is materially false or fraudulent." *Id.* at ¶ 37,

citing R.C. 317.13(B). The Supreme Court went on to note:

> The instruments that the county recorder's office electronically records and places into the office's computer system reflect the office's compliance with its many *statutory duties and its exercise of discretion over the recording process*. The electronic records thus *manifestly document the organization, functions, policies, decisions, operations, or other activities of the recorder's office. Without these recorded instruments, the recorder's office could not perform its preeminent functions. In fact, the chief of staff of the recorder's office acknowledged that providing copies of recorded instruments to the public is a primary function of the office.*

(Emphasis added.)

{¶ 61} Like the recorder's office, BCI has statutory duties which are discretionary.

Pursuant to R.C. 109.51, the bureau of criminal identification and investigation was created

within the office of the attorney general. R.C. 109.54(A) states:

> The bureau of criminal identification and investigation *may investigate any criminal activity in this state that is of statewide or intercounty concern when requested by local authorities.*

(Emphasis added.)

The records BCI received from Goshen Police Department were not only "received by" BCI

but it was also "relied" upon them. BCI's actions were in conformity with its discretionary

authority under R.C. 109.51 to investigate possible criminal activity at a local police

department. Once BCI accepted the request from the Clermont County Sheriff's Office and

the Goshen Township Chief of Police to investigate the missing property from the Goshen

Police Department by receiving and reviewing the records, all of the records fell within the definition of "records" under R.C. 149.011(G). Also, without the records provided by Goshen Police Department, BCI *could not perform its preeminent or primary function* of investigating criminal activity of intercounty concern. Accordingly, contrary to the majority's position, all the records provided by Goshen Police Department to BCI were "records" under R.C. 149.011(G).

## 2. "Specific Investigatory Work Product" Exception

{¶ 62} Having found that the records BCI received from Goshen Police Department are records within the meaning of 149.43(G), the next step is to determine whether the Journal is entitled to the requested extraordinary relief by clear and convincing evidence. *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, paragraph three of the syllabus. Here, it is undisputed that: (1) the Journal made a public records request to BCI seeking records involving missing property from the Goshen Police Department and; (2) BCI refused to provide the records in their possession claiming they were protected by the CLEIR's "specific investigatory work product exception." As the Ohio Supreme Court noted in *State ex rel. Miller v. Ohio State Highway Patrol, et al.*, "[e]xceptions to disclosure under the Public Records Act are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception." *Id.*, 136 Ohio St.3d 350, 2013-Ohio-3720, ¶ 23, citing *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, paragraph two of the syllabus, citing *State ex re. Beacon Journal Publishing Co. v. Akron*, 112 Ohio St.3d 351, 2006-Ohio-6174, ¶ 30. Accordingly, as BCI refused to provide the requested records, BCI must demonstrate that the withheld records fall within the claimed statutory exception.

{¶ 63} As noted by the majority, "whether a particular record is a 'confidential law enforcement investigatory record' is determined by a two-part test.'" *Miller* at ¶ 25. "First, is

the record a confidential law enforcement record? Second, would release of the record 'create a high probability of disclosure' of any one of the four kinds of information specified in R.C. 149.43(A)(2)?" *Id.*, quoting *State ex rel. Musial v. N. Olmsted*, 106 Ohio St.3d 459, 2005-Ohio-5521, ¶ 19. Specific investigatory work product as well as the identity of a suspect who has not been charged with the offense to which the record pertains are two of the four types of information listed in R.C. 149.43(A)(2).

{¶ 64} It is undisputed that the records are confidential law enforcement records as they are records which pertain to a law enforcement matter of a criminal or at least a quasi-criminal nature. *See* R.C. 149.43(A)(2). Accordingly, the question becomes whether BCI presented evidence that the release of the records would create a high probability of disclosure of specific investigatory work product or the identity of the targeted suspects.

{¶ 65} In its motion for summary judgment, BCI attached the affidavit of Rebori who acknowledged receiving two sets of documents from Goshen Police Department which were attached as Exhibit B. Rebori went on to state these records were "assembled, compiled, and maintained by me for use in my investigation of the missing property." As to the specific investigatory work product, Rebori asserted:

> 10. The documents I received include incident reports from the Goshen Police Department. The release of these incident reports and other records that I compiled would reveal the targets and focus of my investigation into the missing property.
>
> 11. Certain of the documents I gathered contain identities of uncharged suspects, and I can specify the information within those documents which would have a high probability of revealing the identities of those suspects if necessary and if this information can be provided under seal.

{¶ 66} From this evidence, BCI, at the very least has created a genuine issue of material fact regarding whether the records at issue fall squarely within the specific investigatory work product exception. From Rebori's affidavit, it is clear that BCI has

acknowledged that incident reports, in general, are not protected records under the specific investigatory work product exception as set forth by *Steckman* and its progeny. *See State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 434 (1994) ("The work product exception does not include ongoing routine offense and incident reports, including, but not limited to, records relating to a charge of driving while under the influence and records containing the results of intoxilyzer tests. Routine offense and incident reports are subject to immediate release upon request"). What is troubling about BCI's claim that releasing these compiled incident reports and other records would have a high probability of revealing the identities of the targeted suspects and the focus of its investigation into the missing property is the fact that upon completion of its investigation, BCI provided redacted versions of these same incident reports and other records. This begs the question of why could BCI not initially provide the Journal with the redacted version of these documents? Furthermore, without additional evidence, it is unclear how some of these documents would either reveal the targeted suspect or the focus of BCI's investigation. Based on the limited evidence before this court and after performing an *in camera* inspection of the records, I find that there is a genuine issue of material fact regarding whether BCI has established that the withheld records fall "squarely" within the specific investigatory work product exception, and therefore summary judgment is inappropriate at this time.

### 3. Common Law Privilege for Law Enforcement Investigative Records

{¶ 67} As an alternative justification for withholding its entire investigative file, BCI claims the common law privilege for law enforcement investigative files applies and protects the file from disclosure. BCI's argument is without merit. The common law privilege for law enforcement investigative records does not serve as an independent basis to prevent disclosure of the records; rather, the exception under R.C. 149.43(A)(2) serves as the only basis to preclude disclosure of records pertaining to an ongoing criminal investigation. *State*

*v. ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, ¶ 28-29; *State v. Multimedia, Inc. v. Whalen*, 48 Ohio St.3d 41, 42 (1990).

## Conclusion

{¶ 68} Based on the foregoing, I would deny both motions for summary judgment and continue the proceedings herein in order to give the parties an opportunity to submit additional evidence in support of their respective positions as to whether the withheld records or redacted information would create a high probability of disclosure of specific investigatory work product or the identity of targeted suspects.