[Cite as *Ryan v. State Farm Mut. Auto Ins. Co.*, 2023-Ohio-3731.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| CHRISTOPHER P. RYAN | : | |
| | : | |
| Appellee | : | C.A. No. 29778 |
| | : | |
| v. | : | Trial Court Case No. 2021 CV 04801 |
| | : | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, ET AL. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Appellants | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on October 13, 2023

. . . . . . . . . . .

JAMES R. GALLAGHER & LAURA PLANK FOUNDS, Attorneys for Appellant

JOHN A. SMALLEY, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Defendant-Appellant State Farm Mutual Automobile Insurance Company, properly known as State Farm Fire and Casualty Company ("State Farm"), appeals from the trial court's decision granting, in part, Plaintiff-Appellee Christopher P. Ryan's motion to compel disclosure of State Farm's claims file, ordering State Farm to immediately

disclose certain materials within its claims file that State Farm sought to withhold from discovery pending the trial outcome of Ryan's underlying uninsured motorist (UM) claim against State Farm. State Farm contends that the trial court erred in ordering State Farm to produce privileged and confidential information to Ryan, including its valuation of Ryan's UM claim, in advance of trial where the value of Ryan's claim is the primary issue to be litigated. For the reasons outlined below, we reverse the decision of the trial court.

## I.  Factual and Procedural Background

{¶ 2} On November 25, 2019, Ryan was involved in a motor vehicle collision with uninsured motorist Brandy Wallace, as a result of which Ryan was injured, required medical treatment, and incurred medical expenses. Following the accident, Ryan made a claim for UM benefits to his insurer, State Farm, with which he maintained UM coverage with an "each person" limit of $25,000; Ryan claimed that his medical expenses related to the accident totaled $19,377. State Farm offered Ryan $15,363.90 to resolve Ryan's UM claim, but Ryan refused State Farm's offer, asserting that its offer did not cover the medical expenses that he had incurred and that remained outstanding because of the accident. Thereafter, Ryan filed a complaint against Wallace, alleging negligence, and against State Farm, alleging breach of contract due to State Farm's failure to pay the $25,000 UM policy limit and bad faith in State Farm's determination that the value of Ryan's UM claim was $15,563.90 and in its refusal to consider the gross amount of Ryan's medical bills in valuing his UM claim. The trial court granted default judgment against Wallace on February 24, 2022.

{¶ 3} In March 2022, Ryan served State Farm with written discovery requests,

including a request for State Farm's entire claims file related to Ryan's claim. In April 2022, State Farm filed a motion to bifurcate the bad faith claim from the breach of contract claim and to stay discovery on the bad faith claim. State Farm also responded to Ryan's written discovery requests but withheld from production certain documents contained in the claims file on the grounds that State Farm would be prejudiced if required to produce those documents while Ryan's UM and bad faith claims were pending simultaneously and because certain documents were protected by privilege. In May 2022, the trial court stated that it would bifurcate the compensatory and punitive damages issues for trial but overruled State Farm's request to bifurcate the breach of contract and bad faith claims; the trial court also denied State Farm's request to stay discovery on the bad faith claim.

{¶ 4} In October 2022, Ryan filed a motion to compel, seeking an order compelling State Farm to produce its entire claims file and arguing that materials within the file, described as claim handling notes and claim handling reports, should be disclosed, as those materials were not privileged in any way and were relevant to Ryan's bad faith claim. In response, State Farm asserted that it had produced all but 103 pages of its 920-page claims file and that the remaining undisclosed materials were documents that related to State Farm's evaluation and analysis of Ryan's UM claim, were privileged attorney-client communications, or were materials created in preparation of litigation and thus protected work product. State Farm argued that it should not be compelled to disclose any of the materials that it had withheld prior to the adjudication of the UM claim, including some materials that were neither privileged nor work product, as disclosure of any of those materials would unfairly prejudice State Farm's ability to defend against the

underlying breach of contract claim.

{¶ 5} State Farm submitted the undisclosed materials to the trial court for an in-camera inspection, arguing that it would be unfairly prejudiced in its ability to defend against the underlying breach of contract claim if it were required to produce privileged materials that were arguably relevant to the bad faith claim and related to its valuation of the UM claim prior to the adjudication of the breach of contract claim. State Farm argued that, in addition to attorney-client privileged and protected work-product materials, it should not be required to disclose certain nonprivileged and non-work-product materials pertaining to its evaluation and opinion of Ryan's UM claim. According to State Farm, those nonprivileged and non-work-product materials contained State Farm's thought processes and opinions, and therefore went "to the very heart" of the underlying UM value dispute and should not be disclosed.

{¶ 6} The trial court conducted an in-camera review of State Farm's undisclosed materials, separating the documents into five different groups: claims handling notes that had been redacted, asserting privilege; claims handling notes that had been entirely withheld, asserting protected work product; correspondence between State Farm and hired counsel that had been entirely withheld, asserting attorney-client privilege; intracompany emails that had been entirely withheld, asserting attorney-client privilege or protected work product; and claims handling reports, asserting protected work product.

{¶ 7} In April 2023, the trial court amended its decision on bifurcation, sustaining State Farm's earlier motion and ordering that the underlying breach of contract and bad faith claims be bifurcated into separate stages for trial to the same jury. The trial court

ordered that, immediately following the jury's decision on the underlying breach of contract claim, the same jury would hear further evidence and deliberate on the bad faith claim.

{¶ 8} With respect to Ryan's motion to compel, the trial court found that the communications between the parties had taken a turn toward litigation during a phone call on the morning of October 29, 2021, when Ryan's counsel made settlement demands and threatened litigation for bad faith if State Farm did not comply with those demands. The trial court noted that State Farm subsequently sent an impasse letter to Ryan, indicating to the trial court that, from that point forward, State Farm was likely anticipating litigation. In so finding, the trial court concluded that any materials produced by State Farm after the claim log note at 10:41 a.m. on October 29, 2021, were work product prepared in anticipation of litigation and thus subject to the in-camera review. The trial court further found that State Farm's investigation and review of Ryan's UM claim had been terminated on November 24, 2021, when State Farm was served with Ryan's complaint, and thus any materials prepared by State Farm after November 24, 2021, were not discoverable, as those materials would not otherwise be probative of any alleged bad faith by State Farm in its handling of Ryan's claim.

{¶ 9} The trial court found no prejudice to State Farm in ordering State Farm to immediately disclose the nonprivileged and non-work-product materials in State Farm's claims file. The court reasoned that all nonprivileged and non-work-product materials were irrelevant to the underlying breach of contract claim and provided no meaningful insight into State Farm's defense of said dispute. The trial court further found that there

was no authority that provided for protecting nonprivileged or non-work-product materials from disclosure and ordered State Farm to immediately disclose those materials.

{¶ 10} The trial court also determined that none of the privileged attorney-client materials should be disclosed, as the documents had been generated after State Farm concluded its review of Ryan's claim, and therefore they were not relevant to the bad faith claim.

{¶ 11} Finally, with respect to other evidentiary materials in State Farm's claims file, as itemized in its privilege log and specifically including work-product materials, the trial court also found that, although State Farm's immediate disclosure of certain work-product materials may have provided Ryan with slight insight into State Farm's defense of the value dispute in the breach of contract claim, "any minimal prejudice that might occur to State Farm as a result of immediate disclosure is substantially outweighed by the interest of judicial economy served by not delaying discovery." In so finding, the trial court set forth specific disclosure rulings on each item, ultimately granting in part and overruling in part Ryan's motion to compel and ordering State Farm to immediately disclose certain materials, including work product.

## II.      Assignment of Error

{¶ 12} State Farm asserts the following sole assignment of error:

The trial court erred in ordering State Farm to produce privileged and confidential information to Plaintiff-Appellee, including, but not limited to, its valuation of Appellee's claim in advance of a trial where the value of his claim is the primary issue to be litigated.

**{¶ 13}** A trial court has broad discretion in regulating the discovery process. *State ex rel. Grandview Hosp. & Med. Ctr.*, 51 Ohio St.3d 94, 95, 554 N.E.2d 1297 (1990). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Civ. R. 26(B)(1). "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Evid. R. 401. In the discovery context, both relevant evidence and evidence reasonably calculated to lead to relevant evidence are properly discoverable. *Bogart v. Blakely*, 2d Dist. Miami No. 2010-CA-13, 2010-Ohio-4526, ¶ 10.

**{¶ 14}** However, some relevant evidence is protected from disclosure if it is privileged, including evidence that is attorney-client communications or work product. "In Ohio, the attorney-client privilege is governed both by statute, R.C. 2317.02(A), which provides a testimonial privilege, and by common law, which broadly protects against any dissemination of information obtained in the confidential attorney-client relationship." *State ex rel. Dawson v. Bloom-Carroll Local School Dist.,* 131 Ohio St.3d 10, 2011-Ohio-6009, 959 N.E.2d 524, ¶ 27, citing *State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.,* 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 24. The attorney-client privilege protects communications between a client and an attorney made in

confidence and related to the legal advice sought by the client. R.C. 2317.02(A); *State ex rel. Lanham v. DeWine*, 135 Ohio St.3d 191, 2013-Ohio-199, 985 N.E.2d 467, ¶ 27.

{¶ 15} Courts have also recognized the need for attorneys to be able to work "free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The work-product doctrine was born out of this concern and is found in Civ.R. 26(B)(4), which states that "* * *[a] party may obtain discovery of documents, electronically stored information and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing of good cause therefor. * * *" Civ.R. 26(B)(4). Additionally, the work-product doctrine generally protects a broader range of materials than the attorney-client privilege because it applies to any materials prepared in preparation for litigation or trial. *Frank W. Schaefer v. C. Garfield Mitchell Agency*, 82 Ohio App.3d 322, 329, 612 N.E.2d 442 (2d Dist.1992).

{¶ 16} "Documents containing work product materials typically reflect mental impressions, theories, or legal conclusions of an attorney or those working on behalf of the attorney." *Drummond v. State Farm Mut. Auto Ins. Co.*, 10th Dist. Franklin No. 22AP-100, 2023-Ohio-283, ¶ 36, citing *In re Special Grand Jury Investigation*, 10th Dist. Franklin No. 18AP-730, 2019-Ohio-4014, ¶ 8, citing *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶ 60. "[I]nformation in an insurer's claims file sought to be protected from discovery as work product must have actually been 'prepared in anticipation of litigation,' and not merely in

the ordinary course of business." *Dennis v. State Farm Ins. Co.*, 143 Ohio App.3d 196, 203, 757 N.E.2d 849 (7th Dist. 2001). "The ordinary business reports of an insurer during the initial investigation of a claim made by one of its insureds are not generally considered to have been 'prepared in anticipation of litigation.' " *Id.* "The party seeking protection under the work product doctrine bears the burden of establishing that the doctrine applies." *Id.*, citing *Special Grand Jury Investigation* at ¶ 12.

*Jurisdiction*

{¶ 17} Before this court can exercise jurisdiction over an appeal, the order of the lower court must meet the finality requirements of R.C. 2505.02. "Under R.C. 2505.02(B)(4), an order that grants or denies a provisional remedy is a final order if (a) '[t]he order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy,' and (b) '[t]he appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.'" *Loukinas v. State Farm Mut. Auto. Ins. Co.*, 1st Dist. Hamilton No. C-180462, 2019-Ohio-3300, ¶ 15.

{¶ 18} Discovery orders by a trial court are generally neither final nor appealable. *Id.* at ¶ 16, citing *Summitbridge Natl. Invests., L.L.C. v. Ameritek Custom Homes, Inc.*, 1st Dist. Hamilton No. C-120476, 2013-Ohio-760, ¶ 6. However, "a proceeding for discovery of privileged matter is a 'provisional remedy' within the meaning of R.C. 2505.02(A)(3)." *Id.*, citing *Smith v. Chen*, 142 Ohio St.3d 411, 2015-Ohio-1480, 31 N.E.3d 633, ¶ 5.

{¶ 19} "[A] party is not required to conclusively prove the existence of privileged

matter as a precondition to appellate review under R.C. 2505.02(B)(4)." *Id.* at ¶ 17, citing *Byrd v. U.S. Xpress, Inc.*, 1st Dist. Hamilton No. C-140260, 2014-Ohio-5733, ¶ 12. "To impose such a requirement would force an appellate court 'to decide the merits of an appeal in order to decide whether it has the power to hear and decide the merits of an appeal.' " *Id.* at ¶ 17, quoting *Bennett v. Martin*, 10th Dist. Franklin No. 09AP-294, 2009-Ohio-6195, ¶ 35. "Instead, a party need only make a 'colorable claim' that materials subject to discovery are privileged in order to qualify as a provisional remedy." *Id.*

{¶ 20} "Any order compelling the production of privileged or protected materials certainly satisfies R.C. 2505.02(B)(4)(a) because it would be impossible to later obtain a judgment denying the motion to compel disclosure if the party has already disclosed the materials." *Id.* at ¶ 18, citing *Burnham v. Cleveland Clinic*, 151 Ohio St.3d 356, 2016-Ohio-8000, 89 N.E.3d 536, ¶ 21. In the case before us, State Farm makes a colorable claim to prevent the disclosure of privileged and protected information. Because the trial court's order compels the production of materials allegedly protected as work product and by attorney-client privilege, the order satisfies R.C. 2505.02(B)(4)(b) because there is no effective remedy other than an immediate appeal. *See Burnham* at ¶ 25.

*Standard of Review*

{¶ 21} Ordinarily, a discovery dispute is reviewed under an abuse-of-discretion standard. *Harvey v. Cincinnati Ins. Co.*, 2d Dist. Montgomery No. 27470, 2017-Ohio-9226, ¶ 7. However, where a trial court's discovery order involves an alleged privilege, as in this case, we review the order de novo. *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, ¶ 13; *see also Loukinas* at ¶ 21; *Cherryhill Mgmt.,*

*Inc. v. Branham*, 2d Dist. Montgomery No. 28438, 2020-Ohio-596, ¶ 43; *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St. 3d 181, 183, 2009-Ohio-2496, 909 N.E.2d 1237 (2009); *Bausman v. Am. Family Ins. Group*, 2d Dist. Montgomery No. 26661, 2016-Ohio-836, ¶ 8.

*Merits of the Appeal*

**{¶ 22}** In its sole assignment of error, State Farm argues that, in general, when there is a dispute as to the value of an uninsured or underinsured motorist claim, a trial court commits reversible error in ordering the insurer to divulge the value it placed on the claim and its analysis of the claim prior to the time of a trial on the merits of that issue. In so arguing, State Farm first contends that an insurer defending a UM claim may assert the same rights and defenses as the uninsured motorist could have asserted in defending the same claim. We agree.

**{¶ 23}** "In an uninsured-underinsured motorist situation the rights of the insured become adverse to his insurer as a result of the uninsured and underinsured provisions of the insurance contract." *Bertolo v. Liberty Mut. Ins. Co.*, 8th Dist. Cuyahoga No. 53796, 1988 WL 86963, *3 (July 28, 1988). "When a suit is originated by the insured, the interests of the insurer become aligned with those of the uninsured or underinsured motorist." *Id.* In other words, "[i]f a trial is held on the merits, counsel is retained to defend the interests of the uninsured motorist and, thereby, the insurer." *Nationwide Mut. Ins. Co. v. Sams*, 6th Dist. Erie No. E-88-27, 1989 WL 61722, *3-4 (June 9, 1989). As the Ohio Supreme Court has noted:

It is a universal legal maxim that an insurance company must be able to assert the same defenses as the party for whose injurious action it is

requested to provide compensation. There is no reason why carriers should be refused the right to assert the very same rights and defenses available to the person whose alleged negligence they are required to indemnify.

*State Farm v. Webb*, 54 Ohio St.3d 61, 64, 562 N.E.2d 132 (1990).

{¶ 24} In this case, Ryan was injured by an uninsured motorist, and thus he submitted a claim for UM coverage to his insurer, State Farm. When the parties were unable to reach an agreement as to the value of Ryan's UM claim, Ryan filed suit against Wallace, the uninsured motorist, and against State Farm. As the UM insurer, State Farm stepped into Wallace's shoes and had the legal right to assert the same defenses that Wallace would have been able to assert against Ryan's claim. In other words, when Ryan originated this action against State Farm for UM coverage, State Farm's interests became aligned with Wallace's interests, and counsel for State Farm was to defend the interests of the uninsured motorist and, thereby, State Farm, the insurer. At oral argument, Ryan acknowledged that were his claim a third party one, he would not be entitled, at any time, to any documents in the State Farm claims file.

{¶ 25} State Farm next argues that the trial court erred when it ordered State Farm to immediately produce certain documents from its claims file. The trial court concluded that the documents in the claims file were not protected by the work-product doctrine or by attorney-client privilege and that any minimal prejudice to State Farm due to the immediate disclosure of certain work-product documents would be substantially outweighed by the interest of judicial economy served by not delaying discovery. State Farm specifically contends that the trial court erred in concluding that State Farm must

produce the foregoing information from its claims file because production of that information would prejudice State Farm's ability to defend against Ryan's UM claim. State Farm also contends that the trial court erred in concluding that State Farm must produce work-product information from its claims file after the trial court concluded that production of the information would not be sufficiently prejudicial to State farm.

{¶ 26} The crux of State Farm's argument is that the trial court erred in ordering State Farm to produce certain documents from its claims file because, regardless of whether those documents constituted information protected as work product or by the attorney-client privilege, the materials should have been deemed protected from discovery so long as determination of the value of the underlying UM claim remained pending. State Farm contends that, where the insured is simultaneously pursuing a claim for UM coverage and bad faith, the protections that are normally afforded to an insurer who is insuring a tortfeasor should not be thrown out in the interest of judicial economy, while prejudicing the insurer's ability to negotiate or try the value of the claim. We agree.

{¶ 27} "In an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage." *Boone v. Vanliner*, 91 Ohio St.3d 209, 213-214, 744 N.E.2d 154 (2001). Ohio courts have also held that "*Boone*'s rationale extends to work-product materials, such that both attorney-client materials and work-product materials are subject to disclosure during discovery on bad-faith claims." *Loukinas,* 1st Dist. Hamilton No. C-180462, 2019-Ohio-3300, at ¶ 24, citing *Garg v. State Auto. Mut. Ins. Co.*, 2d Dist. Miami No. 2003-CA-12, 2003-Ohio-5960, ¶ 16.

However, the *Boone* court recognized that "the release of work product or attorney-client privileged materials related to the issue of coverage might inhibit an insurer's ability to defend itself on the underlying claim." *Id.* at ¶ 25, citing *Boone* at 214. In so recognizing, the *Boone* court suggested that the trial court "may issue a stay of the bad faith claim and related production of discovery pending the outcome of the underlying claim." *Id.*

{¶ 28} In support of its argument, State Farm relies *Loukinas,*. In *Loukinas*, the plaintiff filed an UM claim with State Farm after being injured in an automobile accident with an uninsured driver. *Loukinas* at ¶ 2. When State Farm refused to pay the plaintiff's UM claim, the plaintiff filed a lawsuit against State Farm, asserting claims for breach of contract and bad faith and requesting a declaratory judgment. *Id.* The trial court granted State Farm's request to bifurcate the plaintiff's bad faith claim from the remaining claims for trial, finding that bifurcation was appropriate because the bad faith cause of action hinged upon an initial determination of coverage. *Id.* at ¶ 3-6. The trial court determined that, " 'before a jury can assess whether State Farm has unfairly evaluated Mr. Loukinas's claim, purposely delayed processing his claim, or offered unreasonably low settlements as alleged in the bad faith cause of action,' the issue of coverage must first be adjudicated." *Id.* at ¶ 6.

{¶ 29} After bifurcating the case and conducting an in-camera review of State Farm's claims file, the *Loukinas* trial court granted State Farm's request to stay discovery on the bad faith claim until the underlying claims were resolved, recognizing that State Farm's ability to defend the underlying claims "would be inhibited by a release of claims file materials containing privileged or work-product protected materials related to the bad-

faith claim." *Id.* at ¶ 7. The trial court also granted in part and denied in part the plaintiffs' motion to compel discovery, denying the motion to compel with respect to some of the documents identified in State Farm's privilege log as being either "attorney-client privileged" or "work product." *Id.* at ¶ 8. However, despite its stay on discovery related to the bad faith claim, the trial court ordered State Farm to immediately turn over all documents created prior to the filing of the plaintiffs' first complaint and any items identified by State Farm as an "evaluation" that was "created by claims representatives at any time," finding that those evaluations were "relevant to the issue of coverage and may cast light on the bad faith cause of action." *Id.* at ¶ 9. The trial court also ordered State Farm to turn over several documents after adjudication of the declaratory judgment and breach of contract claims, because those documents were "not relevant to the declaratory action," but "may, however, cast light on the bad faith cause of action." *Id.* at ¶ 10.

{¶ 30} State Farm appealed the *Loukinas* trial court's order granting in part the plaintiffs' motion to compel discovery of State Farm's evaluations contained in the claims file and denying in part its motion to stay discovery on the plaintiffs' bad faith claim. *Id.* at ¶ 21. In its evaluation of the merits of the appeal, the First District pointed to *Boone,* 91 Ohio St.3d 209, 213-214, 744 N.E.2d 154, recognizing that the release of work product or attorney-client privileged materials related to the issue of coverage might inhibit an insurer's ability to defend itself on the underlying claim and that, in such a situation, the bad faith claim and related production of discovery pending the outcome of the underlying claim may be stayed. *Id.* at ¶ 25. The court ultimately held that the plaintiffs were not

entitled to discover the materials protected by the work-product doctrine or attorney-client privilege in State Farm's claims file for purposes of their declaratory judgment and breach of contract claims. *Id.* at ¶ 30. The court reasoned that, "[a]lthough these documents may cast light on whether State Farm acted in bad faith in handling the plaintiffs' claim and, thus, are discoverable for purposes of the bad-faith claim, they retain their privileged status for the underlying claims." *Id.* The court further reasoned:

> Requiring State Farm to divulge its otherwise protected information prior to a resolution of those other claims would undoubtedly affect State Farm's ability to defend against them, and would, as State Farm contends, render the bifurcation order "toothless."

*Id.* at ¶ 31.

{¶ 31} State Farm also directs us to *Garg v. State Auto. Mut. Ins. Co.*, 2d Dist. Miami No. 2003-CA-12, 2003-Ohio-5960, wherein we found that the trial court had erred in denying a stay of discovery on the plaintiffs' bad faith claim and held (1) claims file documents created prior to the denial of the insureds' claim were not protected from discovery by the attorney-client privilege or the work-product doctrine for purposes of the insureds' bad faith claim and (2) the bad faith claim was required to be bifurcated from other claims and discovery stayed until resolution of the other claims. In *Garg*, we reasoned:

> We agree with [the insurer] Grange that the trial court's failure to bifurcate the bad-faith claim for trial and to stay discovery on that claim would be grossly prejudicial to Grange and, thus, an abuse of discretion.

The Gargs are not entitled to discover Grange's attorney-client communications and attorney work-product materials for purposes of their breach-of-contract and unfair-claims-practices claims, absent waiver of those privileges. See *Moskovitz* [*v. Mt. Sinai Med. Ctr.,* 69 Ohio St.3d 638, 635 N.E.2d 331 (1994)]. Documents numbered 1742-1772 contain [an attorney's] analysis of the factual investigation of the claim and of the defense of arson. Although that correspondence may cast light on whether Grange acted in bad faith in handling the Gargs' claim and, thus, is discoverable for purposes of the bad-faith claim, it is also highly relevant to Grange's defense of the breach-of-contract and unfair-claims-practices claims. To require Grange to divulge its otherwise privileged information prior to a resolution of those other claims would unquestionably impact Grange's ability to defend against them.

As noted by the parties, *Boone* has provided guidance for preventing the prejudice that may result from the disclosure of attorney-client communications and work-product materials due to a bad-faith claim. Specifically, *Boone* instructs that courts may bifurcate the trial on a bad-faith claim from the remaining claims and may stay the discovery for a bad-faith claim until after a resolution of those claims. In light of the prejudice to Grange that likely will result from the disclosure of the attorney-client communications and the work-product materials in the claims file, we conclude that the trial court acted unreasonably when it failed to prevent

that prejudice by bifurcating the trial and staying discovery on the bad-faith claim.

*Id.* at ¶ 29-30.

**{¶ 32}** In distinguishing the facts in *Garg*, the trial court concluded that the documents at issue in this case were created as part of State Farm's ordinary course of business, not in preparation for trial, and thus were not protected. However, the trial court disregarded that the *Garg* court did not conclude that the plaintiff was never entitled to receive the documents sought but, rather, that the plaintiffs should not have the documents until the underlying claims were resolved.

**{¶ 33}** The trial court opined that the circumstances in this case were almost identical to those in *Drummond v. State Farm Mut. Auto Ins. Co.*, 10th Dist. Franklin No. 22AP-100, 2023-Ohio-283. In *Drummond*, the plaintiff and the insurer, State Farm, disputed the value of an underinsured motorist (UIM) claim, resulting in the plaintiff's filing a complaint against State Farm alleging breach of contract and bad faith. *Id.* at ¶ 3-5. State Farm later filed a motion seeking to bifurcate the bad faith claim from the breach of contract claim and to stay discovery on the bad faith claim pending resolution of the breach of contract claim. *Id.* at ¶ 6. The trial court initially issued an order bifurcating the breach of contract claim and the bad faith claim upon finding "it would prejudice the defense to have to litigate the bad faith claim while litigating the underlying issue of economic and non-economic damages"; it ordered State Farm to submit any disputed documents and a privilege log to the court for an in-camera review to determine whether the documents were protected by any privilege. *Id.* at ¶ 7.

{¶ 34} Thereafter, the *Drummond* trial court modified its ruling on bifurcation due to "foot dragging" by State Farm, discovery abuses, and further delays by deciding to try the bad faith claim to the same jury immediately following the verdict on the breach of contract claim. *Id.* at ¶ 9. The trial court also found that the plaintiff had demonstrated good cause to obtain otherwise-protected work-product materials. *Id.* at ¶ 8. State Farm appealed the trial court's ruling, asserting that the trial court had erred in denying State Farm's motion to stay discovery as to the bad faith claim and in ordering State Farm to produce privileged and confidential information, including its valuation of its claim in advance of trial, where the value of the claim was the primary issue to be litigated, and to also produce post-suit communications regarding the defense of the case. *Id.* at ¶ 12. On appeal, the Tenth District held that the trial court had properly determined that the insurer's defense of the breach of contract claim would not be prejudiced by immediate disclosure of purported work-product materials but that materials relevant to the insurer's defense against the bad faith claim were work-product materials that were not discoverable. *Id.* at 60-62.

{¶ 35} In Ryan's case, the trial court had bifurcated the breach of contract claim from the bad faith claim by ordering that the underlying breach of contract and bad faith claims be tried in separate stages by the same jury. Specifically, in mirroring the bifurcation ruling in the *Drummond* case, the trial court ordered that, immediately following the jury's decision on the underlying breach of contract claim, the same jury would hear further evidence and deliberate on the bad faith claim, without finding the extraordinary circumstances of "foot dragging" and discovery abuses that existed in *Drummond* and

which supported a trial on the bad faith claim immediately following the trial on the breach of contract claim in that case. The trial court also ordered State Farm to turn over several work-product documents, reasoning that, to the extent immediate disclosure of work-product materials may provide Ryan some "slight" insight into State Farm's defense of the value of the dispute, "any minimal prejudice that might occur to State Farm as a result of immediate disclosure is substantially outweighed by the interest of judicial economy served by not delaying discovery."

{¶ 36} We find the holdings in *Loukinas* and *Garg* to be persuasive in this matter. Like in *Loukinas*, State Farm acknowledges that protected attorney-client communications and work-product materials are generally discoverable with respect to bad faith claims but contends that it cannot prepare and present a defense in the underlying UM claim if it is required to turn over its claims file materials containing its evaluations and strategies for defending the underlying case.

{¶ 37} As we stated in *Garg*, not bifurcating breach of contract and bad faith claims is "grossly prejudicial" to the insurance company. While the trial court ordered bifurcation of the issues, it allowed discovery related to Ryan's bad faith claim to proceed immediately, which would also be grossly prejudicial to State Farm. In doing so, like the *Loukinas* court found, we find that requiring State Farm to divulge its otherwise protected information prior to a resolution of Ryan's other claims would undoubtedly affect State Farm's ability to defend and would render the bifurcation order "toothless."

{¶ 38} Additionally, attorney-client privilege or the privilege associated with work-product materials should not yield to judicial economy, under any circumstance, until such

time as the privileged information becomes relevant. Judicial economy is not served by merely bifurcating the breach of contract and bad faith claims, without staying all discovery related to the bad faith claims, as an immediate interlocutory appeal will very likely ensue, as occurred here, when the trial court makes decisions related to the disclosure of attorney-client privileged or work-product materials, thereby causing delay in the adjudication of the UM claim.

{¶ 39} Moreover, as State Farm contends, if the trial court's decision in this case were to stand, future plaintiffs-insureds would have an incentive to include a claim for bad faith in any lawsuit involving a claim for UM/UIM coverage, because a claim for bad faith would automatically permit the insured to gain access to information in the claims file of its insurer, potentially as to the insurer's assessment and valuation of the claim to which the insured would otherwise not be entitled.

{¶ 40} Also, as argued by State Farm, and in general, even if a jury does not hear evidence of an insurer's opinion regarding the strengths and weaknesses of a claim, the insured's counsel, having the information, can use it to the insured's advantage for purposes of settlement negotiations or during the underlying trial, potentially creating a scenario in which the insured alleges bad faith based on the insurer's allegedly undervaluation of the claim, utilizes the privileged information to obtain a larger jury verdict than may otherwise have been rendered, and then uses that verdict as proof of bad faith.

{¶ 41} State Farm is not arguing that Ryan should never be entitled to the documents he is seeking and State Farm does not challenge the trial court's decision as

to the discoverability of the documents at issue; rather, it argues that the trial court should have refrained from ordering State Farm to produce such documents until after the underlying UM claim is resolved. Similarly, we are not suggesting that Ryan would never be entitled to receive the documents that he is seeking, but, in accordance with *Garg*, we conclude that Ryan should not have that information until the underlying claim for breach of contract related to UM benefits is resolved.

{¶ 42} We hold today that, as a matter of law, in an action based on an insurance contract, a trial court errs in failing to bifurcate a bad faith claim from a breach of contract claim and in failing to stay all discovery in the bad faith claim until after the adjudication of the breach of contract claim. In light of the prejudice to State Farm that likely would result from the disclosure of the materials in the claims file potentially relevant to State Farm's breach of contract defense, we conclude that the trial court erred as a matter of law when it failed to prevent that prejudice by granting Ryan's motion to compel, thereby ordering State Farm to immediately disclose any materials within its claims file that State Farm previously had sought to withhold from discovery pending the trial outcome of Ryan's UM claim.

{¶ 43} State Farm's sole assignment of error is sustained.

### III.   Conclusion

{¶ 44} Having sustained State Farm's assignment of error, the trial court's decision compelling State Farm to produce the disputed documents prior to the adjudication of the UM claim is reversed. This case is remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

TUCKER, J. and LEWIS, J., concur.